UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————————————— )
                                              )
JUDICIAL WATCH, INC.,                         )
                                              )
                Plaintiff,                    )
                                              )        Civil Action No. 95-133
        v.                                    )        Civil Action No. 97-289
                                              )        Civil Action No. 97-2416
                                              )        Civil Action No. 96-2747
                                              )           (RCL)
UNITED STATES DEPARTMENT                       )
OF COMMERCE,                                   )
                                              )
                Defendant.                    )
———————————————————————— )


<u>MEMORANDUM OPINION</u>

Before the Court are the defendant's Motions for Summary Judgment in Civil Action

Nos. 95-133 [doc. 617], 97-289 [doc. 32], 97-2416 [docs. 42 and 47], and 96-2747 [doc. 36].

Upon consideration of the motion papers, the applicable law and the records in these cases, the

Court will grant each of the defendant's motions for summary judgment.


<u>BACKGROUND</u>

The plaintiff, Judicial Watch, Inc. ("Judicial Watch"), filed these actions pursuant to the

Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, against the defendant, the Department of

Commerce ("DOC").  The DOC conducted a search pursuant to Judicial Watch's FOIA requests,

a search which the Court found to be "inadequate, unreasonable and unlawful."  <u>Judicial Watch,</u>

<u>Inc. v. Dep't of Commerce</u>, 34 F. Supp. 2d 28, 45 (D.D.C. 1998).  Having found this first search

grossly inadequate, the Court ordered the DOC to conduct a "rigorous" second search in satisfaction of its FOIA duties and in compliance with a separate order issued that date.  Judicial Watch, 34 F. Supp. 2d at 46.

Subsequent to the Court's 1998 Order, Judicial Watch made five separate FOIA requests, each lodged in a separate civil action as discussed herein.   In Civil Action No. 95-133, Judicial Watch sought access to:

> all correspondence, memoranda, lists of names, applications, diskettes, letters, expense logs and receipts, diary logs, facsimile logs, telephone records, notes and other documents and things that refer or relate in any way to" certain trade missions involving former Secretary Brown from January 1993 through October 1995.

In Civil Action No. 97-289, Judicial Watch sought access to:

> all correspondence, memoranda, lists of names, applications, diskettes, letters, expense logs and receipts, diary logs, facsimile logs, telephone records, notes and other documents and things that refer or relate in any way to" certain trade missions involving former Secretary Brown from January 1993 through October 1996; information on certain identified individuals and organizations, as well as certain documents of former Secretary Ron Brown.

In Civil Action No. 96-2747, Judicial Watch sought access to:

> all correspondence, memoranda, lists of names, applications, diskettes, letters, expense logs and receipts, diary logs, facsimile logs, telephone records, notes and other documents and things that refer or relate in any way to" certain trade missions taken by the Department in 1995, work performed or responsibilities held by former Deputy Assistance Secretary John Huang, records concerning certain specified individuals, and other categories of records that would update certain of the Judicial Watch's prior FOIA requests to the Department.

In the request underlying the first motion for summary judgement in Civil Action No. 97-2416, Judicial Watch sought access to:

> all documents produced by the DOC within the last twelve (12) months in
> response to any request, demand, or subpoena by any investigatory agency
> or body, including the United States Department of Justice (including any
> of its divisions, the Federal Bureau of Investigation, and its United States
> Attorneys for the District of Columbia or any other district), the United
> States Congress (and any of its committees), or any grand jury impaneled
> pursuant to federal law in any judicial district of the United States.

In the request underlying the second motion for summary judgement in Civil Action No. 97-

2416, Judicial Watch sought access to:

> all documents produced by the DOC within the last twelve (12) months in
> response to any request, demand, or subpoena by any investigatory agency
> or body, including the United States Department of Justice (including any
> of its divisions, the Federal Bureau of Investigation, and its United States
> Attorneys for the District of Columbia or any other district), the United
> States Congress (and any of its committees), or any grand jury impaneled
> pursuant to federal law in any judicial district of the United States.

.After its second document search, responsive to each of Judicial Watch's FOIA requests,

the DOC produced some responsive documents and withheld others pursuant to various FOIA

exemptions.  The DOC moved for summary judgment in each case relative to Judicial Watch's

specific FOIA requests and its specific FOIA withholdings.  In each case, the DOC seeks an

order approving the second search and its invocations of the FOIA exemptions.

Judicial Watch urges the Court to find the second search inadequate, including the DOC's

use of FOIA exemptions to withhold certain classes of information and documents.  It seeks a

new round of discovery to further examine the DOC's search procedures and to locate other

responsive documents that Judicial Watch claims the DOC did not produce.

Judicial Watch filed an opposition in each case, disputing the adequacy of the second

search and the DOC's use of the various FOIA exemptions.  In support of its oppositions,

Judicial Watch submitted and principally relied upon the declaration of Sonya Stewart ("Stewart

Declaration"), the DOC's FOIA Director at the time of both searches.  Relying on the Stewart

Declaration, Judicial Watch argues that the second search was inadequate because: (1) the same

persons involved in the first search were active participants in the second; (2) rules and

procedures used during the first search were re-utilized in the second search; and (3) the DOC is

misusing various FOIA exemptions to unlawfully withhold responsive documents.  For reasons

stated in a separately issued memorandum opinion and order, the critical majority of the Stewart

Declaration was stricken pursuant to Rules 12(f) and 56(e) of the Federal Rules of Civil

Procedure.  As such, the only portions of Judicial Watch's oppositions remaining before the

Court are the legal arguments and factual assertions contained in the memoranda of law attached

to its oppositions.


## LEGAL STANDARD

Summary judgment is appropriate when the motion papers, affidavits, and other

submitted evidence demonstrate that no genuine issue of material fact exists and that the moving

party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Celotex Corp. v.

Catrett, 477 U.S. 317, 322 (1986).  Whether a fact is "material" is determined in light of the

applicable substantive law invoked by the action.  See Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 248 (1986).  In light of the applicable substantive law, a "genuine issue of material fact" is a

fact that is determinative of a claim or defense, and therefore, affects the outcome of the case.

See Celotex, 477 U.S. at 322; Anderson, 477 U.S. at 248.  The moving party bears the initial

burden of demonstrating that no genuine issues of material fact are in dispute.  Upon such a

showing, the burden then shifts to the non-moving party to demonstrate that genuine issues of

material fact are in dispute.  The Court is precluded from weighing evidence or finding disputed

facts and must draw all inferences and resolve all doubts in favor of the non-moving party.  See

Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).


DISCUSSION

For the DOC to prevail on its summary judgment motions, it must demonstrate that it,

first, conducted an adequate search, one "reasonably calculated to uncover all relevant

documents" and that, second, any withheld materials fall within a statutory exemption.  Weisberg

v. Dep't of Justice, 705 F.2d 1344, 1351 (D.C. Cir. 1983); Judicial Watch v. Dep't of Justice,

306 F. Supp. 2d 58, 64 (D.D.C. 2004).  Judicial Watch contests both the search's adequacy and

the propriety of withholdings under FOIA's seven exemptions.


I.      Adequacy of the Second Search

When responding to a FOIA document request, an agency is obliged to conduct a good

faith search that is reasonably calculated to uncover all documents responsive to that request.

See United States v. Coast Guard, 180 F.3d 321, 325-26 (D.C. Cir. 1999); Campbell v. Dep't of

Justice, 164 F.2d 20, 27 (D.C. Cir. 1998); Oglesby v. Dep't of the Army, 920 F.2d 57, 68 (D.C.

Cir. 1990).  The adequacy of a FOIA search, and the corresponding search burden, are case-

dependent.  See Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990).  Normally, an

agency need only conduct a "reasonable" search, but in this case the DOC's burden was

heightened as a result of its prior misconduct.  See Judicial Watch, 34 F. Supp. 2d at 46.  In its

1998 Memorandum Opinion, this Court found that

[T]he DOC's search was inadequate, unreasonable and unlawful under the FOIA. The DOC failed to search entire offices that were likely, if not certain, to hold responsive documents. Documents were destroyed, discarded and given away, sometimes without being searched to determine if they were responsive, other times with full knowledge that they were responsive.

Judicial Watch, 34 F. Supp. 2d at 46. The Court ordered the DOC to conduct a second search "more restrictive and rigorous . . . than those ordinarily ordered as relief in a FOIA case" because the "egregious facts of this case make such requirements entirely necessary to ensure agency compliance with the law and this Court's orders." Id. The Court also found that Judicial Watch could conduct discovery "related to the destruction or removal of documents after its first FOIA request was filed, [which] may include, out of necessity, some inquiry into the creation and handling of documents." Id.

In a separate order issued that date, the Court also prescribed the following search rules:

(1) that the search be monitored by the Chief of Staff for the Secretary of the Department and the Department's OIG;

(2) that the new search include all bureaus and offices of the Department in which responsive documents were located in prior searches for records responsive to the requests in this case;

(3) that in bureaus or offices where no records were previously located a search would either be performed or the head of the office or bureau would sign a declaration as to why responsive records could not reasonably be expected to be located in a search;

(4) that detailed search instructions be given to each bureau and office as set forth in DOC's March 20, 1998 filing; and

(5) that each office searched submit one or more declarations from an individual with personal knowledge describing how the search was designed and performed and attesting to the fact that all responsive documents located were forwarded to a central location to then be processed for release.

6

As to the searches performed in Civil Action Nos. 95-133, 97-289 and 96-2747, the motion papers and supporting declarations demonstrate that the DOC engaged in an exhaustive second search that conformed with both its normal obligations under the FOIA and its obligations as heightened by this Court's 1998 orders.  In fact, above and beyond what the Court ordered, the DOC issued the following search instructions:

> (1) Bureaus and Offices required to engage in a new search had to have their search plans approved by the OIG as well as by Ms. Swiatek, the Search Coordinator for the Chief of Staff;
>
> (2) a search checklist was provided to each office and bureau setting forth in detail the areas to be searched and the types of records to be examined and a signature on the completed checklist was required by each office and bureau;
>
> (3) all Bureau heads were required to sign a search certification which included a commitment to retain all original responsive documents and not to destroy any documents pending termination of the lawsuit;
>
> (4) all potentially responsive documents located were Bates-stamped and logged;
>
> (5) copies of Judicial Watch's FOIA requests were again disseminated with the search instructions.

See Swiatek Search Decl., Exh. A.  Senior officials from each Bureau were designated to supervise each Bureau's search, and Ms. Swiatek micro-managed the entire search operation. See id. at ¶ 5.  Moreover, OIG conducted a quality control review as ordered by the Court, which included a review of the search procedures and random sample spot checks.  See OIG Memorandum, Exh. 7.  Where OIG found search discrepancies, those were investigated and, where necessary, new searches were conducted.   See id. at ¶ 5-6; OIG Memorandum, Exh. 7 at ¶¶ 4-6.  The second search resulted in the production of several thousand documents, which were

processed and located in a central depository.  Of the thousands of documents searched,

processed and produced, the DOC was unable to locate one document thought to be responsive

and cataloged its efforts and lack of success.  <u>See</u> Swiatek Supp Decl.  Outside contractors

logged each processed document into a database for tracking purposes.  <u>See id.</u> at ¶¶ 10-11.

Offices where no responsive documents would reasonably be expected to be located did not

conduct searches, and provided certifications and/or declarations verifying such.  <u>See id.</u> at ¶¶ 7-

9; White Decl. ¶¶ 3-9; Bunton Decl. ¶¶ 3-7; Tillman Decl. ¶ 6.  The DOC submitted twelve

Vaughn declarations in explanation of the documents/information withheld from production

pursuant to various FOIA exemptions.  <u>See</u> Swiatek Search Decl., at ¶¶ 10-11.   With an

overabundance of caution and a palpable awareness of its prior failings, the DOC's search in

these cases satisfy both the FOIA and this Court.

As to the searches conducted in Civil Action No. 97-2416, the Court finds no factual

basis to support Judicial Watch's assertion that the DOC's search, or descriptions thereof, is

conclusory, inadequate or otherwise raises doubts as to completeness or good faith.  Rather, the

DOC's recount, declarations and exhibits in support thereof, demonstrate a thoughtful,

comprehensive search that satisfies both the legal requirements of the FOIA and the additional

strictures imposed by this Court.

In support of the search in Civil Action No. 97-2416, the DOC submitted the declaration

of Daniel Rooney, the Management Analyst of the Special Matters Unit at the DOC and Project

Coordinator of these searches.  The Rooney declaration details the manner in which the second

search was conducted, the location of responsive documents, and, as discussed later, the statutory

bases for withholding several classes of documents pursuant to various FOIA exemptions.  As

explained in the Rooney declaration the DOC kept documents responsive to Judicial Watch's requests in two locked rooms.  See Rooney Decl. ¶ 2.  In addition, Rooney issued a memorandum "requiring the production of all information related to the handling and processing of documents in response to these information requests from investigatory bodies."  Rooney Decl. ¶ 2.   His office then processed the responsive documents located in the two locked rooms as well as any documents produced in response to his department-wide memorandum. See id.  This search is more than adequate.  The DOC respond to the Court's 1998 orders with an exhaustive search of the two locked rooms where the responsive documents were maintained.  Moreover,  the DOC, knowing that the Court had authorized Judicial Watch to request discovery related to document handling, conducted at its own behest a further department-wide search for any other responsive documents related to the handling and processing of these documents.

In an attempt to controvert the DOC's contentions and submissions, Judicial Watch offers the declaration of Sonya Stewart to "establish" its claims.  However, the Stewart Declaration, Judicial Watch's sole factual basis in support of the assertions in its briefs, does nothing to advance Judicial Watch's argument regarding the inadequacy of the search for absent the critical portions, which, by separate order issued this date, have been stricken as not conforming with the materiality, pertinence, and propriety requirements of Federal Rule of Civil Procedure 12(f), as well as the personal knowledge, admissibility and competency requirements of Federal Rule of Civil Procedure 56(e).  Judicial Watch's opposition briefs alone are factually insufficient to overcome the DOC's demonstrations.

Even if the Court were to consider the stricken portions of the Stewart Declaration, they provide no factual basis capable of controverting the factual support mounted by the DOC.  For

example, the declaration of Pamela Swiatek, a search project coordinator capable of giving first-hand accounts of the search and production process via her personal knowledge of the circumstances, asserts that material that Stewart claims the DOC did not produce was eventually produced to the extent that it could be located, and, as to material that could not be located, the DOC properly detailed this material in the Vaughn Index.  As another example, Stewart bases, her assertions of procedural inadequacy and mal-intent on the notes of another employee and alleged conversations between other employees to which she was not privy.  Overlooking the hearsay problem, for which the Court struck these statement, the statements, taken in a light most favorable to Judicial Watch, are simply insufficient to overcome the personal knowledge-based and properly presented declarations submitted by the DOC.  The other stricken portions of Stewart's declaration regarding purported substantive and procedural inadequacies are based on statements similarly lacking the personal knowledge and the requisite indicia of reliability necessary to combat the DOC's submissions.

Given the DOC's actions in these cases and Judicial Watch's failure to present submissions capable of controverting the volumes of factual support submitted by the DOC, Judicial Watch's request for further discovery into the adequacy of the DOC's search is denied. Judicial Watch has not shown the existence of a "substantial question" concerning the "substantive content of the affidavits relied upon by the agency." Military Audit Project v. Casey, 656 F.2d 727, 751 (D.C. Cir. 1981).

The Court finds that the DOC's actions adequately address the concerns of the court and the  rights of Judicial Watch.  The Court also finds that the DOC's submissions fully advise the Court of the scope and manner in which the second search was conducted, and evince

completeness and good faith.  The Court further finds that the commonalities in personnel and

procedure in the first and second searches do not violate the Court's 1998 orders as neither the

Court's orders nor its memorandum opinion impose rules regarding personnel or general

procedural structure for the second search.  Finally, having no reasonable basis in the instant

cases upon which to import the failings of the first search into the second, the Court finds, on the

instant record, the second search sufficient under the law.


II.     FOIA Exemptions

        When withholding documents pursuant to a FOIA exemption, an agency must show that

the withheld documents fall within one of the statutory exemptions to FOIA.  Weisberg, 705 F.2d

at 1351.  To satisfy its burden, an agency may submit affidavits and declarations describing the

documents withheld and the statutory basis for the withholdings.  See Judicial Watch, Inc. v.

United States Postal Service, 297 F. Supp. 2d 252, 256 (D.D.C. 2004); Vaughn v. Rosen, 484

F.2d 820 (D.C. Cir. 1973).  For the sake of efficiency, the burden may be satisfied by submission

of a "Vaughn Index" and supporting declarations, which are intended to provide a court with an

adequate description of documents that are being withheld from production pursuant to a

specified FOIA exemption and justification for the applicability of the exemption invoked.  See

Founding Church of Scientology v. Bell, 603 F.2d 945, 949 (D.C. Cir. 1979); Vaughn, 484 F.2d

passim.  Efficiency to the side, exemptions are not proper if based merely on "conclusory and

generalized allegations."  Vaughn, 484 F.2d at 826.  Any reasonably segregable portions of

requested records must be disclosed once the exempt portions have been redacted, Oglesby v.

United States Dep't of the Army, 79 F.3d 1172, 1176 (D.C. Cir.1996).  In addition, district courts

11

are required to consider segregability issues even when the parties have not specifically raised

such claims. Trans-Pacific Policing Agreement v. United States Custom Serv., 177 F.3d 1022,

1027 (D.C. Cir.1999).


      A.     Exemption 1

     Pursuant to Exemption 1, an executive agency may prevent disclosure of documents that

are "specifically authorized under criteria established by an Executive order to be kept secret in

the interest of national defense or foreign policy" and "properly classified pursuant to such

Executive order." 5 U.S.C. § 552(b)(1); see Halperin v. CIA, 629 F.2d 144, 148 (D.C. Cir.

1980). Intelligence sources, both the individual human sources and their intelligence gathering

methods, must be insulated from unnecessary revelation as such may lead to, at the least,

embarrassment, and at the most, retribution. Blanketing this type of information, source and

method, in a cloak of near absolute secrecy is critical to the United States' ability to deal with

confidential agents in furtherance of national security. See Afshar v. Dep't of State, 702 F.2d

1125, 1130 (D.C. Cir. 1983).

     In light of courts' presumed lack of expertise in the area of national security and related

disclosure interests, a reviewing court is prohibited from conducting a detailed analysis of the

agency's invocation of Exemption 1. Halperin v. CIA, 629 F.2d 144, 148 (D.C. Cir. 1980).

Review is de novo, but significant deference to an agency's decision is due. Washington Post. v.

Dep't of Defense, 766 F. Supp. 1, 6-7 (D.D.C. 1991). Summary judgment may be granted on

this issue "on the basis of agency affidavits [alone] if they contain reasonable specificity of detail

rather than merely conclusory statements, and . . . they are not called into question by

contradictory evidence in the record or by evidence of agency bad faith." <u>Halperin</u>, 629 F.2d at 148.

Here, in these cases, the DOC successfully maintains that documents withheld pursuant to Exemption 1 are proper and in accord with Executive Order 12958, 3 C.F.R. § 333 (1995).  The DOC specifically maintains the following:  The DOC, the Department of State, the CIA, the USTR, the DSCA and the DIA have determined that the information withheld is properly classified pursuant to Executive Order 12958, §1.5 (a), (b), (c), (d) and (e) because its disclosure would reveal military plans, weapons systems or operations,  information regarding foreign governments, intelligence activities, sources or methods and foreign relations or activities of the United States, including confidential source information, and scientific, technological or economic matters related to national security.  For Civil Action 97-2416, see Rooney Decl. ¶¶8-18 & Exhibit B (DOC); Grafeld Decl. ¶¶ 61-14 (DOS); McNair Decl. ¶¶ 8(a), 10-12, 16-28 & Tab A (CIA); Harrison Decl. ¶¶ 6-10 (USTR); for Civil Action 97-289, see Swiatek Supp. Decl. ¶¶ 5-7 & Exh. A (DOC); Grafeld 2 Decl. ¶¶ 16-22 (DOS); Grafeld 3d Decl. ¶¶ 8-10 DOS); Briick Decl. ¶¶ 8-9 (CIA); Richardson Decl. ¶¶ 6-10 (DIA); for the second motion in Civil Action 97-2416, see Grafeld 4th Decl. ¶¶ 31-35; for Civil Action 96-2747, see Swiatek 2d Supp. Decl. ¶¶ 5-17 & Exhibit A (DOS); Grafeld 2d Decl. ¶¶ 16-22 (DOS); Grafeld 3d Decl. ¶¶ 8-10 (DOS); Briick 1st Decl. ¶¶ 8-9 (CIA); Briick 2d Decl. ¶¶ 9-11, 15-34 (CIA); Richardson Decl. ¶¶ 6-10 (DIA); Keltz 1st Decl. ¶¶ 8-17 & Exh. A (DSCA); Keltz 2 Decl. ¶¶ 11-21 (DSCA).  Consistent with their classification authority, these departments have determined that public disclosure of this information, by itself or in the context of other information, would threaten national security, and that there is no reasonably segregable information to be released.  <u>See</u> Executive Order 12958,

§ 1.2(a); §1.3; see also Rooney Decl. ¶¶ 8-18 & Exh. B. (DOC); Grafeld Decl. ¶¶ 6-14 (DOS);

McNair Decl. ¶¶ 8(a), 10-12, 16-28 & Tab A (CIA); Harrison Decl. ¶¶ 6-10 (USTR); Swiatek

Supp. Decl. ¶¶ 5-7 & Exh. A (DOC); Grafeld 2 Decl. ¶¶ 11-12, 18, 20, 22, 25 (DOS); Grafeld 3d

Decl. ¶¶ 8-10 DOS); Briick Decl. ¶¶ 4, 6-9 (CIA); Richardson Decl. ¶¶ 3-5, 10 (DIA); Grafeld

4th Decl. ¶¶ 26, 36-38; Swiatek 2d Supp. Decl. ¶¶ 5-17, 36 & Exh. A.; Grafeld 2 Decl. ¶¶ 11-12,

18, 20, 22, 25; Grafeld 3 Decl. ¶¶ 8-10; Briick 1 Decl. ¶¶ 4, 6-9; Briick 2 Decl. ¶¶ 9-11, 15-34;

Richardson Decl. ¶¶ 3-5, 10; Keltz 1 Decl. ¶¶ 8-17 & Exh. A.; Keltz 2 Decl. ¶¶ 11-21.

The DOC, DOS, the DSCA and the CIA have withheld classified information regarding

foreign governments pursuant to Executive Order 12958, § 1.5(b) because disclosure would

reveal information obtained in confidence from foreign governments necessary for the

formulation of U.S. foreign policy and action, the disclosure of which would chill the willingness

of foreign governments to disclose this type of information.  See Rooney Decl. ¶11 & Ehx A;

Grafeld Decl. ¶¶ 10-12, 14; McNair Decl., Tab A; Grafeld 2 Decl. ¶¶ 16-18 & Exh. A.; Briick

Decl. ¶¶ 9, 25-27; Grafeld 4 Decl. ¶¶31-33; Swiatek 2d Supp. Decl. ¶¶ 8-11; Grafeld 2 Decl. ¶¶

16-18 & Exh. A.; Briick 1 Decl. ¶¶ 9, 25-27; Keltx 2 Decl. ¶ 11 & Exh. A.

Pursuant to Executive Order 12958, § 1.5(d), the DOC, DOS, USTR, DCSA and CIA

have withheld information regarding various aspects of foreign relations and activities of the

United States, including confidential source information, the disclosure of which would

jeopardize the delicate nature of intelligence collection and information exchange between the

United States and foreign governments and adversely impact national security.   See Rooney

Decl. ¶ 15 & Exh. B; Grafeld Decl. ¶¶ 13-14; McNair Decl., Tab A; Harrison Decl. ¶¶ 6-8 &

Exh. A; Swiatek Supp. Decl. ¶ 7 & Exh. A (DOC); Grafeld 2 Decl. ¶¶ 19-22 (DOS); Grafeld 3

Decl. ¶¶ 6-10 DOS); Briick Decl. ¶¶ 28-34 (CIA); Grafeld 4 Decl. ¶¶ 34-35; Swiatek 2d Supp.

Decl. ¶¶ 14-15 & Exh. A.; Grafeld 2 Decl.,¶¶ 19-22; Grafeld 3 Decl. ¶¶ 6-10; Briick 1 Decl. ¶¶

28-34; Briick 2 Decl. ¶¶ 33-34; Keltz 1 Decl. ¶¶ 16-17 & Exh.A.; Keltz 2 Decl. ¶¶ 11-21 & Exh.

A.

     Pursuant to Executive Order 12958, § 1.5(c), the DOC, DOS, CIA, DSCA and DIA also

withheld classified information pertaining to intelligence sources and methods because the

disclosure of this information would chill the United States ability to communicate with foreign

intelligence sources in a  candid and productive manner, and as such jeopardize national security

information.  See Rooney Decl. ¶ 13-14 & Exh. B; McNair Decl. ¶¶ 16-28 & Tab A; Swiatek

Supp. Decl. ¶¶ 7 & Exh. A (DOC); Grafeld 2 Decl. ¶¶ 19-22 (DOS); Grafeld 3 Decl. ¶¶ 6-10

DOS); Briick Decl. ¶¶ 12-24 (CIA); Richardson Decl. ¶¶ 8-10 (DIA); Swiatek 2d Supp. Decl. ¶¶

12-13 & Exh. A.; Grafeld 2 Decl. ¶¶ 19-22; Grafeld 3 Decl. ¶¶ 6-10; Briick 1 Decl. ¶¶ 12-14;

Briick 2 Decl. ¶¶ 15-31; Richardson Decl. ¶¶ 8-10.  The CIA has also withheld information

regarding intelligence methods used by the CIA to accomplish its missions, the disclosure of

which would render intelligence information useless.  See McNair Decl. ¶ 23 & Tab A; Briick

Decl. ¶ 20; Briick 1 Decl. ¶ 20; Briick 2 Decl. ¶¶ 20-27.

     Pursuant to Executive Order 12958, § 1.5(d), The DOC and DSCA have also withheld

classified information regarding military plans and technological and economic matters related to

national security, the disclosure of which could reasonably be expected to cause serious damage

to national security.  See Rooney Decl. ¶¶ 9-10, 17-18 & Exh. B; Swiatek 2d Supp. Decl. ¶¶ 16-

17 & Exh. A.; Keltx 1 Decl. ¶¶ 15-17 & Exh. A; Keltz 2 Decl. ¶¶ 19-21 & Exh/ A.

     The Court finds that the invocation and application of Exemption 1 to the aforementioned

documents is consistent with the FOIA.  The various departments reviewed the information for classification, and, in each case, determined that the information falls within the aforementioned categories and that release would jeopardize to cause the types of harm detailed. The submitted declarations and the Vaughn Index descriptions more than sufficiently establish that the withholdings are properly classified consistent with Executive Order 12958.  See Carlisle Tire & Rubber Co. v. Customs Serv., 633 F.2d 210, 216 (D.C. Cir. 1980).

Furthermore, the DOC's Vaughn Indices and declarations are sufficiently detailed and non-conclusory.  They provide at least as much detail as the descriptions the D.C. Circuit has previously accepted as adequate.  In Pub. Citizen v. Dep't of State, 276 F.3d 634 (D.C. Cir. 2002), the D.C. Circuit permitted withholding when the agency affidavit stated "disclosure . . . could enable foreign persons or entities opposed to United States foreign policy objectives to identify U.S. intelligence activities, sources or methods." Id. at 644.  In Halperin, the D.C. Circuit similarly permitted withholding when the CIA's affidavit  stated that if the names of its attorneys were revealed "representatives of hostile, foreign intelligence services working in this country [could], by a variety of techniques, ... undertake courses of action to ascertain ... other contacts [or] other locations, and then arrive at determinations whether [the attorney] is doing any other function for the [CIA]."  Halperin, 629 F.2d at 149.

The sworn statements in this case are equally specific and detailed.  For example, Rooney's sworn declaration offered in Civil Action 97-2416 first describes Exemption 1 withholdings at a category-by-category level, affirming:

> Information identified as falling within category (a) has been determined on review to contain information concerning the military plans, weapons systems, or operations of the United States, disclosure of which reasonably could be expected to cause serious damage

to U.S. national security.

Rooney Decl. ¶ 10. Then, Rooney describes withholdings document-by-document. A typical

description, and one that Judicial Watch takes issue with, reads:

> Undated - 5 pages. SECRET memorandum from Ronald H. Brown for the President
> regarding an October 17-18 visit to China. This document was classified and reviewed for
> declassification by the Assistant Secretary for Market Access and Compliance pursuant to
> Section 1.5(b) and (d) of E.O. 12958. The release of this information, which pertains to
> foreign government information and to foreign relations, reasonably could be expected to
> cause serious damage to U.S. foreign relations, and thereby to national security. . . .

Such descriptions are sufficiently detailed and meet the DOC's burden on Summary Judgment.

Judicial Watch, in its attempt to defeat Summary Judgment, offers neither evidence of bad

faith in this second search nor any contradictory evidence. Instead, Judicial Watch makes three

other points. First, it argues that the DOC has, generally, not provided enough specific

information about document classification procedures to permit withholding. This argument has

already been found wanting. Second, Judicial Watch argues that the DOC has not established that

it followed proper classification procedures for documents classified after Judicial Watch's FOIA

request. For each document classified after a FOIA request, an agency "must show that the

document has not previously been released to the public under proper authority and that the

document has been classified by or at the direction of a specially designated official. Executive

Order 12,958.§ 1.8(d); see Public Citizen, Inc. v. Dep't of State, 100 F. Supp. 2d 10, 24 (D.D.C.

2000), *aff'd in part, rev'd in part on other grounds*, 276 F.3d 634 (D.C. Cir. 2002).

Judicial Watch's second argument also fails. The DOC has singled out the handful of

documents that were classified after Judicial Watch's FOIA requests and has, in its sworn

declarations, described the process it followed to classify these documents. For example, in the

second summary judgment motion in Civil Action 97-2416, documents C80, C101, C171, C191 were classified after the proper Department of State senior agency official signed a public order directing the Deputy Assistant Secretary for Records and Publishing Services to make classification determinations pursuant to § 1.8(d) for a group of documents.  Grafeld 4th ¶¶ 37-38; Grafeld 5th ¶ 4.  This and the other sworn declarations, without any contradictory evidence from Judicial Watch, must be taken at their word.

Third, and finally, Judicial Watch points out that for some withheld documents, withholding cannot be proper under Executive Order 12958 because that order is dated April 17, 1995 while the documents have earlier dates.  For example, document 40AK2342, withheld in Civil Action 96-2747, has the date July 28, 1994.  Swiatek 2d Supp. Decl. Supp. Vaughn Index at 1.  The DOC replies that these documents pre-dating the Executive Order were originally classified prior to the FOIA request pursuant to the April 17 order.  While the DOC could have written more lucid declarations on this particular point, the DOC has nonetheless affirmed, through its sworn declarations, that it did classify all documents pursuant to the April 17 order and that its classifications pursuant to that order were proper.

Therefore, for all these reasons, the DOC's Exemption 1 withholdings were proper, and the agency is entitled to Summary Judgment.


B.    Exemption 2

Pursuant to Exemption 2, an agency is permitted to withhold documents "related solely to the internal personnel rules and practices of the agency."  5 U.S.C. 552(b)(2).  Exemption 2 applies both to trivial internal matters, referred to as "low 2" information, and substantial internal

matters, the disclosure of which would facilitate circumvention of the law, referred to as "high 2" information.  See Crooker v. ATF, 670 F.2d 1051, 1074 (D.C. Cir. 1981).

The DOC has invoked Exemption 2 only to withhold "high 2" information.  To establish its right to withhold "high 2" information, the DOC must show that (1) the withheld information is "predominantly internal" and (2) its disclosure "significantly risks circumvention of agency regulations or statutes."  Crooker, 670 F.2d at 1073-74; Founding Church of Scientology v. Smith, 721 F.2d 828, 831 (D.C. Cir. 1983).  In light of Exemption 2's anti-circumvention purpose, public interest in the disclosure is legally irrelevant.  See Voinche v. FBI, 940 F. Supp. 323, 328 (D.D.C. 1996); instead, the focus is on whether disclosure will "benefit those attempting to violate the law and avoid detection," see Crooker, 670 F.2d at 1054.

In Civil Actions 95-133, 96-2747, and 97-289, the DOC withheld Office of Security guidelines for protecting the Secretary of Commerce on trade missions and guidelines for internal audits of Commerce expenses and travel vouchers.  Swiatek 1st Supp. Decl. ¶ 5 & Exh. A at 1-2; Swiatek 2d Supp. Decl. ¶ 26 & Exh. A; Swiatek 3d Supp. Decl. ¶ 5.  Disclosure of this information would compromise the Secretary's safety, making the Secretary subject to unlawful attacks, and could enable Commerce employees to evade the law when preparing expenses for audit.  Id.   Such internal guidelines and audit procedures are exempt from disclosure.  Ginsburg, Feldman & Bress v. Federal Energy Administration, 591 F.2d 717, 723 (D.C. Cir. 1978) (en banc); accord Kaganove v. EPA, 856 F.2d 884 (7th Cir. 1988) (permitting withholding of guidelines and specifications for employee promotions); Dirksen v. Dep't of Health and Human Serv., 803 F.2d 1456 (9th Cir. 1986) (permitting withholding of internal processing guidelines for medicare claims).

19

In Civil Actions 95-133 and 97-2416, the DOC withheld government credit card numbers to prevent public access and misuse.  See, e.g., Rooney Decl. ¶ 19 & Exh.  The Customs Service withheld cases, file numbers and other administrative markings that indicated certain aspects of enforcement cases because knowledge of this information may render the Customs Service's electronic records system vulnerable to hacking, and facilitate circumvention of the laws and regulations enforced by the Customs Service.  See Marshall Decl. ¶¶ 9-11.  The DOD also withheld documents containing information describing the DOD's communication methods, as well as those of other government agencies, that are not generally known to the public, the disclosure of which may facilitate circumvention of the law.  See Aly Decl. ¶¶ 5-7; McIntyre Decl. ¶ 8.  Judicial Watch makes no argument in favor of compelling disclosure.  Thus, taking the agency at its word, these withholdings are proper.


C.      Exemption 3

An agency may invoke FOIA Exemption 3 to prevent disclosure of documents that are:

> [s]pecifically exempted from disclosure by statute ..., provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of material to be withheld.

5 U.S.C. 552(b)(3) (emphasis added).  To determine whether withholdings are proper, "[t]he sole issue . . . is the existence of a relevant statute and the inclusion of withheld material within that statute's coverage." Goland v. CIA, 607 F.2d 339, 350 (D.C. Cir. 1978).  Courts limit nondisclosure statutes to those that are "the product of congressional appreciation of the dangers inherent in airing particular data" and that "incorporate[] a formula whereby the administrator may

determine precisely whether the disclosure in any instance would pose the hazard that Congress foresaw." Am. Jewish Cong. v. Kreps, 574 F.2d 624, 628-29 (D.C. Cir. 1978).   Therefore, "only explicit nondisclosure statutes that evidence a congressional determination that certain materials ought to be kept in confidence will be sufficient to qualify under the exemption." Irons and Sears v. Dann, 606 F.2d 1215, 1220 (D.C. Cir. 1979).  See generally Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 37 (D.C. Cir. 2003).

      In these cases, the DOC relies on several statutes that qualify as Exemption 3 nondisclosure statutes and thus permit its withholding of documents.  First, the DOC and the CIA invoke the National Security Act of 1947, requiring the CIA director to protect intelligence sources and methods from unauthorized disclosure, 50 U.S.C. § 403-3(c)(6), and requiring protection of the functions, names and official titles of CIA personnel, id. § 424.  Second, the DOC and CIA invoke § 6 of the Central Intelligence Agency Act of 1949, 50 U.S.C. 403g, exempting the CIA from any law that requires publication or disclosure of the organization or function of the CIA, or any information with respect to the agency's employees or activities.  Both statutes qualify as Exemption 3 statutes.  CIA v. Sims, 471 U.S. 159, 167 (1985); Krikorian v. Dep't of State, 984 F.2d at 465; Fitzgibbon v. CIA, 911 F.2d 755, 761 (D.C. Cir. 1990); Founding Church of Scientology v. Nat'l Security Agency, 610 F.2d 824, 827-29 (D.C. Cir. 1979); Pfeiffer v. CIA, 721 F. Supp. 337, 341-42 (D.D.C. 1989).  Third, the DOC also properly invokes § 12(c) of the Export Administration Act ("EAA"), 50 U.S.C. app. § 2411(c)(1),  prohibiting public disclosure of information obtained with respect to license applications unless the Secretary determines that the disclosure is in the national interest. See Wisc. Project on Nuclear Arms Control v. Dep't of Commerce, 317 F.3d 275, 281 (D.C. Cir. 2003) (holding that the statute

qualifies as an Exemption 3 statute).  Fourth, the DOC properly invokes the Ethics in Government Act, 5 U.S.C. app. § 107(a)(2), which prohibits public disclosure of government employees' reports to supervising ethics offices.  See Meyerhoff v. EPA, 958 F.2d 1498, 1502 (9th Cir. 1992); Judicial Watch, Inc. v. Rossotti, 285 F. Supp. 2d 17, 30 (D.D.C. 2003) (holding that various versions of the statute qualify as an Exemption 3 statute).  Fifth, the DOC properly invokes the Patent Act, 35 U.S.C. § 122, prohibiting disclosure of patent applications and information pertaining to such applications.  See Irons & Sears v. Dunn, 606 F.2d 1215 (D.C. Cir. 1979) (holding that the statute qualifies as an Exemption 3 statute).  Sixth, the DOC properly invokes Federal Rule of Criminal Procedure 6(e), which prohibits the release of grand jury transcripts, as well as the names or identities of actual or potential grand jury witnesses, or other information that would reveal the scope, focus, and direction of the grand jury.  See Fund for Constitutional Government v. Nat'l Archives and Record Service, 656 F.2d 856, 867, 869 (D.C. Cir. 1981) (holding that the statute qualifies as an Exemption 3 statute).  Finally, the DOC properly invokes the Smith-Mundt Act, which prohibits dissemination within the United States of certain materials about the United States authorized by the Secretary of State and prepared for dissemination abroad, 22 U.S.C. § 1461, and which prohibits program materials prepared by the United States Information Agency from dissemination within the United States, id. § 1461-1a.  See Essential Info. v. United States Info. Agency, 134 F.3d 1165, 1166-68 (D.C. Cir. 1998)  (holding that the statute qualifies as an Exemption 3 statute).

Having properly identified Exemption 3 statutes that permit withholding, the DOC now need only demonstrate that the withheld documents fall within the statutes' ambit.  The DOC's Vaughn Index and the accompanying declarations accomplish this task.

With reference to its statutory invocations, the DOC and the CIA have withheld information regarding intelligence sources and methods; names and other identifying information pertaining to the structure of CIA records.  See Swiatek Supp. Decl. ¶ 9; Briick Decl. ¶¶ 16, 24, 35-37.  The DOC has also withheld export license application information pursuant to the EAA and Executive Branch Public Financial Disclosure Reports pursuant to the Ethics in Government Act.  See Swiatek 2d Supp. Decl., Exh. A.  Consistent with Federal Rule of Criminal Procedure 6(e), the DOC and OIG withheld agent notes containing information that would identify targets and/or subjects of grand jury investigations; information regarding grand jury subpoenas, containing specific matters considered by the grand jury.  See Swiatek 2d Supp. Decl. ¶ 5; Garmon Decl. ¶ 3.  Consistent with the Smith-Mundt Act, the DOC withheld five editions of the United States Information Agency's "Wireless File," a daily electronic news service disseminated abroad, and each edition's table of contents.  See Grafeld 4th Decl. ¶¶ 39-41, pp. 106-108.

Judicial Watch claims that the DOC has not properly specified that certain documents are exempt pursuant to the EAA and that the DOC's description of these documents is inadequately general.  Judicial Watch's claim, made without citation to legal authority, is unfounded.  The DOC, in its Vaughn Index, explains that documents withheld under Exemption 3 are "being withheld pursuant to § 12(c) of the [EAA]."  Rooney Vaughn Index at 44.  The DOC then lists withheld documents, each "concerning an export license application" and each containing a description, such as "[i]nformation about a company that is applying for an export license." Rooney Vaughn Index at 46-135.  Taken together, the information in the DOC's Vaughn Index is sufficient to permit Exemption 3 withholding for these documents.

Judicial Watch similarly claims that the DOC has not properly specified that certain

documents are exempt pursuant to the Smith-Mundt Act and that the DOC's description of these documents makes it impossible for Judicial Watch to determine whether the documents are truly covered by the Act.  Again, Judicial Watch's claim lacks merit.  Grafeld's declarations list all five documents that the DOC has withheld pursuant to Smith-Mundt, names and explains the act, and describes the contents of each document.  Grafeld 4th ¶¶ 39-41, Grafeld 5th ¶ 16.  The Wireless Files withheld and described by the DOC are exempt from disclosure.  Essential Info., 134 F.3d at 1168.  The DOC has produced sufficient information to invoke Exemption 3 for these documents.


D.     Exemption 4

Exemption 4 permits an agency to withhold "trade secrets and commercial or financial information obtained from a person and privileged or confidential."  5 U.S.C. 552(b)(4); see Public Citizen Health Research Group v. FDA, 704 F.2d 1280, 1290 (D.C. Cir. 1983); Gulf & Western Indus., Inc. v. United States, 615F.2d 527, 529 (D.C. Cir. 1980).  Exemption 4 seeks to ensure that the government is supplied with information in an efficient and effective manner and protects a persons who submits commercial and financial information from competitive disadvantages that might otherwise accompany this type of information gathering.  See Critical Mass Energy Research Project v. NRC, 830 F.2d 278 (D.C. Cir. 1987) [hereinafter Critical Mass I].  The term "commercial" for Exemption 4 purposes is construed broadly to include information in which the submitting party has a "commercial interest."  Public Citizen Health Research Group, 704 F.2d at1290.   Information qualifies as "confidential"in one of two ways.  Courts apply one test for confidentiality when the government required the information's submission and apply a different test when submission was voluntary.

*1.  Compelled Information*

When the government obliges or compels a document's submission, information contained in that document is confidential

> if disclosure of the information is likely to have either of the following effects: (1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained.

Nat'l Parks & Conservation Ass'n v. Morton, 498 F.2d 765, 770 (D.C. Cir. 1974), limited by Critical Mass Energy Project v. Nuclear Regulatory Comm'n, 975 F.2d 871, 872 (D.C. Cir. 1992) [hereinafter Critical Mass II] (limiting the application of National Parks to FOIA requests for financial or commercial information that a person is obliged to provide to the government).

In each of the related civil actions now before the Court, the DOC has withheld information that it required of parties hoping to participate in or seeking advocacy during the Department's trade missions.  The information included marketing data, financial arrangements, business contacts, contract details, negotiation status, estimates that companies have placed on the value of foreign projects and requests for meetings with foreign contacts that companies have made to DOC.  Swiatek 2d. Supp Decl. at 106-12 (listing and briefly describing individual documents, such as "40AK1714, January 11, 1995 - 2 pages.  Matrix: Summary of Possible India Advocacy Projects.  **Redacted: meetings requested, values.**").  The parties do not contest that the withheld information is commercial; nor do they dispute that the information was compelled, see Lepelletier v. FDIC, 977 F. Supp. 456, 460 n.3 (D.D.C. 1997) (holding that information required for participation in a voluntary program is information that a party was "obliged to furnish.").  Based on the withheld information being commercial and compelled, the DOC then argues under the

rubric set forth in <u>National Parks</u> that the information is confidential, and thus within Exemption 4, because it is likely to cause the entities submitting the information substantial competitive harm, as well as chill the necessary supply of this type of information, the receipt of which is necessary to fulfillment of the DOC's mission.  See Swiatek 1st  Supp. Decl. at 5; Swiatek 2d Supp. Decl. at 7-8.

 In Civil Actions 95-133, 96-2747, and 97-289, Judicial Watch challenges the DOC's assertion of confidentiality on the basis that the DOC, through its Vaughn indices and affidavits, has not shown the requisite likelihood of harm to the entities contributing information.  Judicial Watch criticizes the DOC for not submitting "concrete evidence of specific harm" that would occur upon release of the withheld documents.   Judicial Watch's criticism has no basis in law.  Both Judicial Watch and the DOC cite <u>National Parks</u>, which, as already noted above, requires only that the substantial harm be "likely."  <u>Nat'l Parks</u>, 498 F.2d at 770; <u>see also</u> <u>McDonnell Douglas Corp. v. Dep't of the Air Force</u>, 375 F.3d 1182, 1187 (D.C. Cir. 2004).

 The DOC has shown a likelihood of substantial harm.  The withheld information, the DOC argues, "would be likely to cause . . . [the information contributors] substantial harm . . .  because disclosure to competitors of commercial plans and desired contacts could be useful to competitors interested in developing their own ventures."  Swiatek 1st Supp. Decl. Exh. A. at 5; see also Swiatek 2d Supp. Decl. at 8.  If the DOC were to disclose the estimated value of potential ventures and the identities of potential corporate partners, the entities contributing this information could face competition that, but for the disclosure, would have never existed.  Where the DOC has stated a case for likelihood of substantial harm and Judicial Watch has responded without viable legal or factual challenge, this Court concludes that the DOC's Exemption 4 withholdings in these cases

are valid.

Even if no likelihood of substantial harm to the information contributors existed, the information is confidential, and therefore within Exemption 4, based on the likelihood that disclosure would impair the government's ability to collect and utilize similar information in the future.   The DOC asserts that collection of this information is "necessary to assist Commerce in fulfilling its mission," including advocacy for important projects and the identification of entities that will be successful.  Motion for Summary Judgment 95-133, at 28.  Judicial Watch does not put forth argument or evidence disputing the DOC's argument that disclosure would chill the DOC's similar, future data collection endeavors.

Judicial Watch raises further, specific challenges to the DOC's withholdings in Civil Action 97-2416.  First, Judicial Watch claims that a finance agreement between OPIC and the Dabhol Power Company cannot be withheld in full.  The finance agreement, which has document numbers 40AA3900 and 40AM2828, consists of a three-page cover letter that the DOC has released and the agreement itself, which sets forth terms such as the "interest rate, repayment schedules, interest rate changes, commitment and other fees, expenses and premiums." the specific negotiated terms."  Naide Vaughn Index at 6.  Contracts in and of themselves may not be commercial information subject to Exemption 4; however, terms within contracts certainly can be exempt.  Comstock Int'l v. Export-Import Bank, 464 F. Supp. 804, 808 (D.D.C. 1979); Piper & Marbury, L.L.P. v. United States Postal Serv., No. 99-2383, 2001 U.S. Dist. LEXIS 2492 (D.D.C. Mar. 5, 2001).

In Comstock, FOIA requesters sought disclosure of a loan agreement.  The court permitted the Export-Import Bank to withhold the agreement under Exemption 4 on the basis that it

contained confidential commercial and financial information.  The agreement, if disclosed, would have significantly impaired the bank's ability to promote United States exports, because borrowers would flock to lenders who would be less likely to disclose loan agreement terms, and would have impaired the bank's effectiveness in obtaining concessions from debtors in future negotiations.  Id.

In this case, the DOC alleges similar harms would result from disclosure of OPIC's finance agreement.  OPIC would face difficulty negotiating future agreements with borrowers fearful of disclosure.  In addition, the business submitter has informed OPIC that it would suffer "substantial competitive harm by negatively impacting their ongoing negotiations with third parties involved in the project."  Naide Vaughn Index at 7.  The DOC has established the commercial and confidential nature of the finance agreement's terms to the same extent that the bank established these things with respect to its agreement in Comstock, and therefore, the DOC is entitled to withhold  the finance agreement in its entirety pursuant to Exemption 4.

As to other documents in these matters that Judicial Watch claims the DOC withheld without sufficient explanation, this Court finds after review that the DOC's explanations, set forth in its Vaughn indices and affidavits, are adequate for withholding the documents and portions of documents described

.

### 2. Voluntarily Submitted Information

When a person voluntarily provides documents to the government, information contained in those documents is confidential if it is of the kind that the person would not customarily disclose to the public.  Critical Mass II, 975 F.2d at 879.  The agency bears the burden of proving the document provider's custom.  Id. at 879.  It is the document provider's custom, not the industry

custom, that matters.  Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin., 244 F.3d 144,

148 (D.C. Cir. 2001).  While affidavits from the information providers themselves or evidence of

confidentiality agreements would carry more weight on the custom issue, see, e.g., Parker v.

Bureau of Land Mgmt., 141 F. Supp. 2d 71, 78-79 (D.D.C. 2001), it is sufficient for an agency to

proceed solely on its sworn affidavits, Judicial Watch v. Dep't of Justice, 306 F. Supp. 2d 58, 68

(D.D.C. 2004).

　　　Voluntary submission are only at issue in Civil Action 97-2416.  In that case, the DOC

relies solely on the declarations of government officials who describe the withheld information,

assert that the information was voluntarily submitted, and assert the information providers

customarily refrain from disclosing this kind of information to the public.  The DOC withheld

information from 16 documents related to "actual or planned business or financial activities, such

as bids on construction projects, plans for investment, sales offers, etc."  Grafeld 4th Decl. ¶ 44.

The DOC collected this kind information, in large part, from willing U.S. and foreign business

contacts in an effort "to formulate effective policies" and "to assist Americans in specific cases."

Id. at ¶ 45.  These business contacts generally submit the information "with the knowledge that a

good working relationship with American officials abroad can be good for business;" though "no

quid pro quo" exists "and the information cannot be said to be required."  Id. ¶ 46.  The DOC and

the business contacts  have an "understanding – more usually tacit than explicit – that the

information will be held in confidence by the U.S. and not publicly divulged," and respect for this

understanding is "essential" for the U.S.'s continued acquisition of this information.  Id. ¶ 45.

　　　In addition to these general remarks regarding Exemption 4 withholdings, the DOC

describes the withheld information document-by-document.  Consider two descriptions as

examples.  Document C7 is a telegram from the U.S. Embassy in Beijing to the DOC.  The

document contains information from a Chinese company "regarding its range of business

operations and dealings with other firms, including state-owned entities."  The information "is of

the type not customarily give to the public."  Grafeld 4th Decl. at 40-41.  Document C108 is a

telegram from the U.S. Embassy in Jakarta to the Department of State and concerns the Indonesian

effort to develop a national car.  The document contains "assessments on the implementation of the

national car policy conveyed in confidence to the embassy by . . . industry sources" and

"information concerning investment plans by an American firm that was voluntarily shared with

the Embassy. . . .  which is of a kind not customarily shared with the public."  Grafeld 4th Decl. at

67-68.

Judicial Watch first argues that some of the withheld information in five of these 16

documents was not voluntarily submitted.  Specifically, Judicial Watch claims that the bidding

information submitted was required information.  To be sure, bidding information submitted at an

agency's behest for consideration by that agency is required, Lepelletier, 977 F. Supp. at 460 n.3;

however, the bidding information in this case, though collected by the DOC, was submitted to

foreign governments for the governments' consideration.  Grafeld 5th Decl. ¶ 8.  Such information

is not required by any United States legal authority and therefore is voluntarily submitted.  See Ctr.

for Auto Safety, 244 F.3d at 149.

Next, Judicial Watch argues that the document descriptions just quoted do not adequately

establish each documents's confidentiality under Exemption 4: it claims that the DOC has not

sufficiently demonstrated the information provider's custom of non-disclosure.  Judicial Watch's

bare assertions, made without evidentiary support, are unpersuasive.  See Allnet Communication

Servs. v. FCC, 800 F. Supp. 984 (D.D.C 1992) (finding that a requester's unsubstantiated

challenge to Exemption 4 withholding was "vague hearsay" that "cannot raise a genuine issue as to

a material fact").  These DOC descriptions, which are some of the least detailed of the sixteen, are

adequate.  They establish that the withheld information is both commercial and confidential and

that the DOC withholdings under Exemption 4 were proper.


E.      Exemption 5

Exemption 5 permits an agency to withhold documents constituting "inter-agency or

intra-agency memorandums or letters which would not be available by law to a party other than an

agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  Withholdings under this exemption

may include documents "normally privileged in the civil discovery context."  NLRB v. Sears,

Roebuck & Co., 421 U.S. 132, 148 (1975); see also Martin v. Office of Special Counsel, 819 F.2d

1181, 1185 (D.C. Cir. 1987).  Here, the DOC contends that the withheld documents fall within the

deliberative process, attorney-client, and work product privileges.


*1. Deliberative Process Privilege*

Exemption 5 and the deliberative process privilege operate to "protect the decisionmaking

processes of government agencies and encourage the frank discussion of legal and policy issues by

ensuring that agencies are not forced to operate in a fishbowl.  Nevertheless, this privilege, like all

FOIA exemptions, must be construed as narrowly as consistent with efficient Government

operation."  Mapother v. Dep't of Justice, 3 F.3d 1533, 1537 (D.C. Cir. 1993) (internal citations

and quotes omitted).   Proper application of the deliberative process privilege requires that the

31

withheld documents be both pre-decisional and deliberative.  Id.  A document is pre-decisional if it was prepared in assistance of agency decision-making, as opposed to supporting, post hoc, a decision that predates creation of the document.  See Petroleum Info. Corp. v. Dep't of Interior, 976 F.2d 1429, 1434 (D.C. Cir. 1992).  An agency need not:

> identify a specific decision in connection with which a memorandum is prepared. Agencies are, and properly should be, engaged in a continuing process of examining their policies; this process will generate memoranda containing recommendations which do not ripen into agency decisions; and the lower courts should be wary of interfering with this process.

Sears, 421 U.S. at 151 n.18.  A document is deliberative if it reflects the discourse that occurred during the decision-making process, and that discourse is of the type that would be discouraged absent the ability to withhold.  See  Petroleum Info. Corp., 976 F.2d at 1434.  Exemption 5 extends to recommendations, draft documents, proposals, suggestions, and like documents containing the opinion of the writer, as opposed to the policy of the agency.  See Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980).

In these cases, the DOC has withheld or redacted documents regarding the selection of companies to assist the Secretary on trade missions, policy and advocacy decisions, post-trade policies, and the establishment of the Ronald H. Brown Memorial Library, which include subjective analysis, candid comments, and recommendations.  See, e.g., Rooney Decl. ¶¶  24, 27, 29 , 32, 35-36, 38, 40, 43 & Exh. B; Swiatek 2d Supp. Decl. ¶ 20 & Exh. A; McD Miller Decl. ¶¶ 3-7; Grafeld 2 Decl. ¶ 24 & pp. 25-26, 29, 40, 43-44; Grafeld 4th Decl. at 30-31, 34, 68, 72; Swiatek 2 Decl., Exh. A; Nadie Decl., Vaughn Index; Sorbera Decl., App. A-1; Parsons Decl. ¶ 5 & Exh A.  The DOC maintains that the disclosure of this information would impede its decision-making process by discouraging frank discussions amongst its employees.  Judicial Watch disputes withholdings in each case.

In Civil Action 95-133 the DOC withheld issue papers written to assist DOC decision-makers, recommendations on how to conduct negotiations, a draft of an agreement with China, a draft of a letter from the Commerce Secretary to the Vice Premier of the State Council.  All these documents are part of the DOC's deliberative process, were prepared prior to any agency actions, and thus were properly withheld under Exemption 5.  Judicial Watch v. United States Dep't of Energy, 310 F. Supp. 2d 271, 317 (D.D.C. 2004) (briefing papers prepared for cabinet secretary); Sears, 421 U.S. at 150 (recommendations and deliberations); Coastal States, 617 F.2d at 866 (drafts).  Judicial Watch offers no valid challenge to the DOC's withholding of these documents.

In Civil Action 97-289, the DOC has withheld or redacted numerous documents that Judicial Watch has organized into groups and has challenged withholding on a group-by-group basis.  Documents in the first group "discuss proposals for . . . the elements of the Department's final brokered resolution"  certain contracts related to uranium transactions.  Opp. Brief in 97-289 at 30 (quoting the Swiatek Vaugn index).  Documents in the second group contain "deliberations concerning issues such as gift acceptance, legislative proposals, financial disclosure laws . . . ."  Id. (quoting the Swiatek Vaugn index).  Documents in the third group are "advocacy matrices."  These matrices, which DOC employees complete, contain advocacy recommendations, the writer's assessment of any problems with specific projects, and the writer's assessment of any looming obstacles.   Documents in the remaining groups are letters and other documents written by DOC and other U.S. government employees for DOC decision-makers to consider as they deliberate about advocacy on behalf of particular companies, foreign policy, trade policy, export policy, and how to present DOC policy to the public. In each case, these documents fall under Exemption 5.  The documents are pre-decisional, because they do not represent final agency action, but instead

are the recommendations and personal viewpoints of agency employees. The documents are deliberative, because they reflect the discourse within the DOC.

In Civil Action 96-2747, the kinds of documents at issue are substantially the same as those in Civil Action 97-289. For the reasons just discussed, the DOC's withholdings in these cases is proper.

In the first summary judgment motion for Civil Action 97-2416, the DOC has withheld handwritten notes that

> reflect the Commerce employees' deliberations concerning: congressional inquiries, press inquiries, Freedom fo Information Act requests, . . . . They represent opinions and recommendations for the decisionmakers to evaluate.

Rooney Vaughn Index at 217. The DOC also withheld talking points and recommendations for how to answer questions about the duties of two DOC employees. In each case, these documents were prepared by DOC employees for the consideration of DOC decision-makers. All were properly withheld. Judicial Watch's selective quoting of the Vaughn indices does not convince the court otherwise.

In the second summary judgment motion for Civil Action 97-2416, eight documents are at issue. Document C140 is a draft plan for a business promotion package for Bosnia and Document C138 is a memo sent by a State Department employee that contains State Department and USAID comments on a DOC Preliminary Draft Commercial Strategy for Bosnia and Croatia. Drafts and comments on drafts are squarely within the scope of Exemption 5. Coastal States, 617 F.2d at 866. The remaining six documents are properly withheld under Exemption 1, see supra, and, as regards these documents, the Court makes no enquiry under Exemption 5 at this time.

*2. Attorney-Client Privilege*

The attorney-client privilege in the Exemption 5 context protects "confidential communications between an attorney and a client relating to a legal matter for which the client has sought professional advice." Mead Data Central v. Dep't of the Air Force, 566 F.2d 242, 252 (D.C. Cir. 1977). The privilege promotes "[u]ninhibited confidence in the inviolability of the relationship [which] is viewed as essential to the protection of a client's legal rights, and to the proper functioning of the adversary system." Coastal States, 617 F.2d at 862. The privilege protects all documents reflecting a client's attempt to obtain legal counsel and advice, see id., as well as facts divulged by the client and opinions givens by the attorney, Schlefer v. United States, 702 F.2d 233, 244 n.26 (D.C. Cir. 1983). "In the governmental context, the 'client' may be the agency and the attorney may be an agency lawyer." Tax Analysts v. IRS, 117 F.3d 607, 618 (D.C. Cir.1997).

In Civil Action 95-133, the DOC has withheld reports prepared by attorneys in the Office of the General Counsel describing to superiors the advice they were providing to clients within the department in response to those clients' request for advice. The reports contained confidential information. Such reports are within Exemption 5's ambit. Ludsin v. Small Business Admin., No. 96-2865, slip op. at 3 (D.D.C. Apr. 24, 1997) (holding that an intra-agency report containing an agency attorney's legal conclusions and reasoning falls within the exemption).

In Civil Action 97-2416, the DOC withheld documents that were requests for legal advice made by DOC clients to the Office of the General Counsel or responses made by attorneys to their DOC clients. Rooney Vaughn Index at 246. The documents contain confidential information not disclosed to third parties. Id. The DOC describes each document, identifies the sender and the

receiver, and the nature of the legal request.  For example, document 03CC0387 consists of "draft

documents from OGC attorney Gordon Fields to client, Commerce employee Ray Kammer,

reguarding his request for OGC's proposed input on responses to Congressional inquiries."  Id. at

248.  For a second example, document 50JJ2558 is a letter responding to legal questions posed by

Alma Brown, Secretary Brown's wife, concerning her and her husband's attendance at fundraising

events.  Id. at 247.  As the DOC correctly argues based on its description, these documents are

directly related to requests for legal advice.  Further, the DOC attests that the information in the

documents remains confidential.  Id. at 246.  Therefore, the DOC's withholdings here were proper.

With respect to document 50JJ2558, Judicial Watch's raises the argument that Alma Brown

is no client of the DOC.  Judicial Watch, however,  offers no legal support for the proposition.  It

seems reasonable to the Court that the wife of a cabinet secretary, like the first lady, may at times

be entitled to be entitled to legal advice from the a government agency as regards acts relating to

her official capacity as wife of the Secretary.  See Assoc. of Am. Phys. & Surgeons v. Clinton, 997

F.2d 902, 911 (D.C. Cir. 1993) (finding that First Lady Hillary Clinton was a government

employee for purposes of the Federal Advisory Committee Act).

In Civil Actions 97-289 and 97-2747, the DOC withheld documents with descriptions

substantially similar to those discussed in the other actions, and therefore, the withholdings in Civil

Actions 97-289 and  97-2747 were proper.


*3. Work-Product Privilege*

The work-product privilege is intended to facilitate the adversary process by shielding an

attorney's preparatory work from an opposing party's scrutiny.  See Jordan v. Dep't of Justice, 591

F.2d 753, 775 (D.C. Cir. 1978).  In the Exemption 5 context, the work-product privilege permits an agency to withhold documents prepared by an attorney in anticipation of litigation.  See Hickman v. Taylor, 329 U.S. 495, 509-10 (1947).  So long as a document is prepared in anticipation of foreseeable litigation, the privilege applies, Schiller v. NLRB, 964 F.2d 1205, 1208 (D.C. Cir. 1992), and sweeps broadly so as to include factual material contained in such a document, Martin v. Office of Special Counsel, 819 F.2d 1181, 1187 (D.C. Cir. 1987).

In Civil Action 96-2747, the DOC withheld handwritten notes made during meetings and hearings concerning plaintiff Judicial Watch's FOIA requests and this litigation.  The DOC affirms that two OFG attorneys, Elise Packard and Judith Means, made these notes in contemplation of the litigation with Judicial Watch.  Swiatek 2d Supp. Decl. Exh. A at 52-53.  In addition to these notes, the DOC also withheld an OGC attorney's one page memo and the attached 82 pages of organized, abridged deposition testimony it introduces.  The memo explains what portions of the deposition the author included, explained the subject-matter headings used to classify parts of the deposition, and was to be used by the "Acting General Counsel in developing legal theories and strategies for ongoing litigation with Judicial Watch."  Id. at 54.   In Civil Action 97-289, the DOC withheld two documents: one, prepared by OGC lawyers, talks about legal theories OGC contemplated in response to an administrative complaint filed against the DOC before the Federal Elections Commission; the other, an OGC lawyer's handwritten notes from a court proceeding that recounted the issues important to that lawyer to aid that lawyer in devising a legal strategy.  All of these documents were prepared by lawyers.  In every case, litigation, either this litigation or some other litigation was either occurring or foreseeable.  These documents were properly withheld under Exemption 5 and the attorney work product privilege.

F.      Exemption 6

Exemption 6 permits an agency to withhold documents containing "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. 552(b)(6).  "Similar files" sweeps broadly and includes "detailed government records on an individual which can be identified as applying to that individual."  Dep't of State v. Washington Post Co., 456 U.S. 595, 602 (1982).  Disclosure of such information will constitute a "clearly unwarranted invasion of personal privacy" when the privacy interest of the individual outweigh the public interest in disclosure.  See Dep't of the Air Force v. Rose, 425 U.S. 352, 372 (1976).

In these cases, the DOC withheld social security numbers, home telephone numbers and addresses, a discussion of a visa applicant, visa and passport information, dates of birth, medical information, credit card information, and personal information on a foreign government official, "and the like."  See, e.g., Grafeld 4th Decl. ¶¶ 49-51, pp. 28-30, 32; Rooney Decl. ¶ 23 & Exh. B.; Harrison Decl. ¶ 11 & Exh. A; Naide Decl. Vaughn Index at 5.  The DOC maintains that the disclosure of this information would identify individuals and result in a clearly unwarranted invasion of their personal privacy.   As balanced against the public interest in disclosure, the disclosure of this information has little to do with the public's understanding of the manner in which the DOC conducts business.

Most of the controversy in this case surrounds the information lumped into the DOC's "and the like" category.  As to the enumerated categories, Judicial Watch, in Civil Actions 97-2724 and 97-289, simply requests the court to conduct in camera review.  This court considered the issue of Exemption 6 withholdings related to other, but similar documents in a 1996 summary judgment

motion in Civil Action 95-133.  In that case, the DOC had redacted categories of information

similar to those now enumerated, namely:

> home addresses and telephone numbers, dates of birth, hair and eye color, heights and
> weights, allergies, family information, Social Security numbers, [and] Visa and passport
> data . . . .

Judicial Watch v. Dep't of Commerce, 83 F .Supp. 2d 105, 112 (D.D.C. 1999).   In addition, the

1996 case also considered the DOC's withholding of "a performance appraisal that pre-dates

plaintiff's FOIA request."  Id.  Again, similar withholdings, part of the "and the like" category, are

now before the court.  In the current summary judgment motion in Civil Action 95-133, the DOC

withheld performance appraisals and descriptions of employee performance that might merit DOC

awards – all pre-dating September 8, 1994 and thus the FOIA requests and searches at issue.

Swiatek Decl Sep. 28, 2003 Exh. A (describing documents 40AB6255, 40AB6092, 40AB6094,

and 40AB6253).   Here, just as in that case:

> Plaintiff does not dispute the withholding of this information under Exemption 6 but urges
> the Court to review it in camera just to verify that the withholdings are proper. The Court
> declines plaintiff's suggestion, as plaintiff has pointed to absolutely nothing in the affidavits
> submitted to suggest that they contain information different than that described above, all of
> which falls squarely within the ambit of this exemption.  Plaintiff also disputes the
> withholding of a performance appraisal on the grounds that it may contain evidence of
> government corruption related to his FOIA request. Because the appraisal pre-dates the
> plaintiff's FOIA request, however, the Court finds that it is highly unlikely that this
> particular performance appraisal contains evidence of the government's attempts "to thwart
> plaintiff's FOIA request." Accordingly, as the claimed Exemption 6 withholdings do not
> present genuine issues of material fact, summary judgment for the defendant is appropriate.

Id. (citations omitted).

The Court addresses the remaining "and the like" withholding issues in turn.

In Civil Action 95-133, Judicial Watch challenges the redaction of personal appointments

and associated names and home contract information located in some of Secretary Ron Brown's

calendars and schedules dating from 1993 and 1994.  Swiatek Decl Sep. 28, 2003 Exh. A.  The

D.C. Circuit has held that appointment calendars that are not circulated to other agency employees

and serve no agency purpose are not even agency records under FOIA.  Bureau of Nat'l Affairs v.

Dep't of Justice, 742 F.2d 1484, 1495 (D.C. Cir. 1984).  As for daily agendas or other schedules

that do circulate, these items are agency records, but redaction of personal information is

appropriate.  Id. at 1496.  Therefore, Judicial Watch is not entitled to release of personal

information contained within the Secretary's calendars and schedules.  Still, Judicial Watch argues

that it is entitled to know whether any of these documents refer to meetings between the Secretary

and Nolanda Hill, who testified before this court at length about the DOC's suppression of

documents in the first search not at issue in this case.  The DOC replies in its final brief that the

records, after additional review, contain no mention of Ms. Hill.  Reply Brief in 95-133, at 37 n.17.

In the first summary judgment proceeding in Civil Action 97-2416, Judicial Watch makes

several arguments for the disclosure of portions of particular documents.  First, it argues that two

kinds of information fall outside the class "similar files" protected by Exemption 6: for one,

"comments" in response to being asked to name "known persons in South Africa" in document

03BA2052; for another, a cab driver's name and identification number in document 03AQ0516.

When information withheld under Exemption 6 consists of  "the names and identifying data of

individuals mentioned during the course of routine day-to-day matters with" agencies, "[t]here is

no reason to believe that the public will obtain a better understanding of the workings of various

agencies" by becoming aware of this information.  Voinche v. FBI, 940 F. Supp. 323, 529, 530

(D.D.C. 1996).  Here, as in Voinche, the withheld information consists merely of names and

identifying data for acquaintances of trade mission participants and a cab driver.  "Accordingly, in

light of the countervailing privacy interests of third parties about whom personal information is contained in the requested records, the Court finds that the defendant properly asserted Exemption (b)(6)." Id. at 530.

Second, Judicial Watch argues for disclosure of a resume sent to the DOC by the Department of Agriculture on behalf of an individual interested in "the South Africa Project." There is no evidence that the individual was hired or that the project ever got out of its embryonic stages and moved  forward.  Hinden Decl. Exh. A.  While resumes of people dealing with the government may be subject to disclosure,  Judicial Watch, Inc. v. Export-Import Bank, 108 F. Supp. 2d 19, 37 (D.D.C. 2000), those resumes rejected may not, id. at 38.  Again, withholding here in proper.

Third, Judicial Watch takes issue with redactions from documents related to a DOC employee and a private individual who were implicated during an investigation of alleged improprieties at the American Institute of Taiwan in 1994.  Rooney Vaughn Decl. at 537.  It does not contest the redaction of names, but rather contests the redaction of additional "personal information" of the private individual.  Id.  Information beyond a person's name can identify that person, and courts should proceed to balance the privacy and disclosure interests when there exists "a causal relationship between the disclosure and the threatened invasion of privacy."  Nat'l Ass'n of Retired Federal Employees v. Horner, 879 F.2d 873 (D.C. Cir. 1989).  Here, the DOC affirms that the private individual has a strong interest in not being associated with the 1994 investigation, because harassment might result.  Rooney Vaughn Decl. at 537.  Therefore, there is a causal relationship and a privacy interest.  Judicial Watch offers evidence in support of a countervailing disclosure interest.  Redaction of the "personal information" in these documents was proper.

In the second summary judgment proceeding in Civil Action 97-2416, Judicial Watch contests the non-disclosure of portions of two documents.  Document C65 is a series of letters related to the denial of a visa application.  Some letters recount episodes in a  visa applicant's history that made the applicant, in the writer's view, unworthy of a visa.  One letter sets forth reasons for visa denial, and another letter, now released to Judicial Watch, discussed one entity's visa sponsorship activities.  Grafeld 5th Decl. ¶ 5.  The DOC affirms that these letters contain specific information about the visa applicant and submits that disclosure would invade personal privacy without shedding light on the government's workings.  With respect to the letters concerning the applicant's history, the DOC has justified exemption; however, with respect to the letter setting forth the reasons for denial, which the DOC admits, "explain[s] a routine application of immigration law," id., the DOC did not meet its burden, but the Court has examined this letter in camera and has determined that withholding is proper.  Judicial Watch's argument that the document was redacted too broadly is unfounded in light of the DOC's detailed description and assertion that "no additional substantive information in this document may be segregated and released."  Id.

Document C160 is a telegram from the State Department to several U.S. embassies.  The document is properly withheld pursuant to Exemption 4, see supra; however, the DOC withholds three paragraphs of the document pursuant to Exemption 6.  Grafeld 4th Decl. at 87-88; Grafeld 5th Decl. ¶ 6.   The three redacted paragraphs refer to financier Roger Tamraz's "personal financial status and . . . alleged legal difficulties, which he has encountered in a foreign country."  Grafeld 5th Decl. ¶ 6.  The DOC further asserts that disclosure of the three paragraphs would shed little light on government activities.  Id.  Judicial Watch offers no good reason why disclosure would

42

not be an unwarranted invasion of Mr. Ta2mraz's privacy.   Withholding of this information on Exemption 6 grounds is proper.

Finally, Judicial Watch claims that other Vaughn index entries are too vague or otherwise inadequate.  As before in this case, these claims are without merit because they rely on selective quotation, by omission, of the Vaughn indices and and mischaracterization of the DOC withholdings.


G.    Exemption 7

Exemption 7 permits an agency to withhold certain classes of documents compiled for law enforcement purposes.   5 U.S.C. § 552(b)(7); Ctr. for Nat'l Sec. Studs. v. Dep't of Justice, 331 F.3d 918, 926 (D.C. Cir. 2003).  A "law enforcement purpose" exists where there is a "rational nexus" between the compiled document and a law enforcement duty of the agency and where there is "a connection between an individual or incident and a possible security risk or violation of federal law."  See Ctr. for Nat'l Sec. Studs., 331 F.3d at 926 (citation omitted).   Several classes of documents may be withheld under Exemption 7.  One class of document includes those documents whose disclosure could reasonably be expected to interfere with a pending or anticipated law enforcement proceeding.  See 5 U.S.C. 552(b)(7)(A); Ctr. for Nat'l Sec. Studs., 331 F.3d at 926.  A second class of documents includes those whose disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  Finally, a third class of documents includes those whose disclosure would reveal "techniques and procedures for law enforcement investigations or prosecutions,"  5 U.S.C. § 552(b)(7)(E), not well known to the public, see, e.g., Malley  v. Dep't of Justice, 457 F. Supp. 543, 545 (D.D.C. 1978).

43

*1. Exemption 7(A)*

Exemption 7(A) is "designed to block the disclosure of information that will genuinely harm the government's case in an enforcement proceeding or impede an investigation." North v. Walsh, 881 F.2d 1088, 1097 (D.C. Cir. 1989).  To invoke Exemption 7(A), an agency must establish that the information was compiled for a law enforcement purpose and that disclosure would interfere with enforcement proceedings.  Id. at 1097.  The law enforcement proceeding must have been "a concrete, prospective law enforcement proceeding" at the time of the agency decision to withhold.  Scheer v. Dep't of Justice, 35 F. Supp. 2d 9, 11-13 (D.D.C. 1999).

In Civil Action 96-2747 and 97-289, the DOC withheld, claiming Exemption 7(A), documents containing agent notes about targets and/or subjects of an ongoing grand jury proceeding concerning a Department of Justice task force investigation into violations of campaign finance laws.  The DOC also withheld the identity of a company subject to export enforcement investigation and specifics of the investigated transaction that would tip of the company if released.  DOC maintains that release of this information would "interfere with enforcement proceedings by diminishing the government's ability to shape and control the law enforcement proceedings" and "compromise future prosecutions or plea agreements arising out of the investigation."  See Garmon Decl. ¶¶ 3-4; Swiatek 2d Decl. at 95, 97.  Despite Judicial Watch's assertions to the contrary, these statements by Garmon do indicate why the agent notes would reasonably be expected to interfere with a law enforcement proceeding – the continued prosecution of violators of campaign finance laws – and why, therefore, they should be exempted from disclosure pursuant to Exemption 7(A).

In Civil Action 95-133, the DOC invoked Exemption 7(A) to withhold information related to an ongoing export enforcement action, Swiatek Decl. Sept. 28, 1999 ¶ 26, ongoing BXA

criminal enforcement actions, id. ¶ 29; Swiatek 3d Decl. Exh. A, and ongoing grand jury

proceedings, Garmon Decl. ¶¶ 3-4.  Judicial Watch challenges withholdings in documents

40KA0077 and 40KA0481, both withheld on other grounds, as too conclusory to establish the law

enforcement purpose and the nature of the enforcement proceedings.  The DOC relies on its Vaugn

Description: The document

> contains information, part of a BXA investigative report, pertaining to an ongoing BXA
> law enforcement action . . . .  Disclosure of the information . . . would alert the subject of an
> ongoing investigation to agency opinions about the case, which could reasonably be
> expected to affect the way in which the subject of the investigations responds . . . .

Swiatek Decl. Sept. 28, 1999 Exh. A.  The DOC has made clear both the law enforcement purpose,

the BXA investigation, and the ongoing nature of the proceedings.  Its Exemption 7(A)

withholdings in this case and all these cases are proper.


2. *Exemption 7(C)*

Like Exemption 6, Exemption 7(C) protects against unwarranted invasions of privacy.

Exemption 7(C) protects the identities of suspects and others of investigatory interest who are

identified in agency records in connection with law enforcement investigations. Reporters Comm.

for Freedom of the Press, 489 U.S. 749, 780 (1989).   Given a privacy interest, that interest must be

balanced against the public interest, if any, that would be served by disclosure. Albuquerque Publ'g

Co. v Dep't of Justice, 726 F. Supp. 851, 855 (D.D.C. 1989); however, as with other exemptions

that require balancing, the public interest in only that interest central to FOIA: shedding light on an

agency's performance of its statutory duties.  Reporters Comm., 489 U.S. at 773.

In Civil Action 97-2416, the DOC invokes Exemption 7(C)  to withhold the names of

export enforcement agents found in BXA investigatory files, Rooney Decl. ¶ 31 & Ex. B., the

names of non-supervisory FBI and DOC employees in documents compiled for the OIC's criminal

investigation into possible obstruction of justice by Webster Hubble (at the behest of the OIC),

Gellert Decl. ¶¶ 4, 6., information compiled for the background investigation file of John Huang (at

the behest of the Office of Personnel Management), Baker Decl. Exh. A., the names of private

citizens employed to investigate government employee conduct (at the behest of the State

Department), Dougherty Decl. ¶ 4, and the identities of Customs Officers conducting or

supervising investigations reported in the documents at issue (at the behest of the Customs

Service), Marshall Decl. ¶ 16.  In Civil Action 96-2747, the DOC has withheld names or

identifying code numbers of export enforcement personnel in addition to a report of the OIG on

interviews with the subject of an investigation and the subjects acquaintances.  Swiatek 2d Decl. at

94, 114.  In Civil Action 95-133, the DOC withholds similar information, but Judicial Watch offers

no challenge.

All these documents, according to the DOC's sworn declarations, were compiled for law

enforcement purposes.  Additionally, the DOC has, given the law, sufficiently established that a

privacy interest is at stake.  Individuals subject to law enforcement actions have an obvious privacy

interest under Exemption 7(C), Dunkelberger v. Dep't of Justice, 906 F.2d 779, 781 (D.C. Cir.

1990), and agencies may withhold the names of these individuals as a "categorical matter,

Reporters Comm., 489 U.S. at 780.  Law enforcement officers who work on criminal

investigations, and individuals who provide information to the law enforcement authorities, also

have a privacy interest and their names have traditionally been protected from disclosure by

Exemption 7(C).  Davis v. Dep't of Justice, 968 F.2d 1276, 1281 (D.C. Cir. 1992); Computer

Prof'ls for Social Responsibility  v. Secret Service, 72 F.3d 897, 904 (D.C. Cir. 1996).  Further,

private citizens who may be mentioned in investigatory files, witnesses, and informants enjoy a privacy interest.  Davis, 968 F.2d at 1281; King v. Dep't of Justice, 830 F.2d 210, 233 (D.C. Cir. 1987).  Judicial Watch does not assert a public interest to balance against the strong privacy interest that forms the basis for the decisions allowing redaction just cited.  Therefore, the DOC has established that its withholdings under Exemption 7(C) are proper.

Still, Judicial Watch argues that the DOC has, in many cases, withheld entire documents under Exemption 7(C) when only names should have been withheld.  This argument is meritless. As the DOC explains in its reply, it justifies its document withholdings under two Exemptions, Exemption 3 or Exemption 5 and Exemption 7(C).  The first exemption permits withholding the entire documents; the second exemption, Exemption 7(C) offers an alternative basis for withholding, by redaction, names and identifications.  When an entire document is validly withheld pursuant to one exemption, the withholder cannot be expected to describe the rationale for a second, partial withholding by reference to withheld material.  That is essentially what Judicial Watch is asking for here: to have Exemption 7 more completely justified in terms of information contained in documents withhold pursuant to other exemptions.

Judicial Watch also argues, as it has continually argued throughout its opposition, that the DOC's document descriptions lack sufficient detail to enable Judicial Watch to challenge the DOC's exemption claim.  For example, Judicial Watch quotes a portion of the DOC's document description for document 54CD0464 and asserts it is inadequate: "54CD0464 . . . is simply described as a 'three-page telegram . . . regarding the status and elements of the ongoing investigation.'" Opp. Brief in Civil Action 97-2416, at 37 (quoting Marshall Decl. ¶ 8(E)). Apparently, Judicial Watch has not considered this sentence in context of the remainder of the

declaration, which explains the progress and status of the investigation underlying the documents,

Marshall Decl. ¶ 7, and describes in detail that names of Customs investigators and clerical

personnel were withheld to protect them from harassment, id. at ¶¶ 17-18.  Far from conclusory,

the statement are detailed and sufficient to permit withholding.


   3.  Exemption 7(E)

   This Court has noted:

> Exemption 7(E) affords "categorical" protection for "techniques and procedures"
> used in law enforcement investigations or prosecutions.  Smith v. Bureau of
> Alcohol, Tobacco, and Firearms, 977 F. Supp. 496, 501 (D.D.C. 1997) . . . .  While
> Exemption 7(E)'s protection is generally limited to techniques or procedures that are
> not well-known to the public, even commonly known procedures may be protected
> from disclosure if the disclosure could reduce or nullify their effectiveness.  See,
> e.g., Coleman v. FBI, 13 F. Supp. 2d 75, 83 (D.D.C. 1998).  In justifying the
> application of Exemption 7(E), the agency may describe the general nature of the
> technique while withholding the full details. Coleman, 13 F. Supp. 2d at 83.

Judicial Watch v. FBI, No. 00-745, 2001 U.S. Dist. LEXIS 25732, at *26-27 (D.D.C. Apr. 20,

2001).

   In Civil Actions 95-133, 96-2747, 97-2416, the DOC has withheld techniques the BXA

used to identify parties and transactions that should be monitored for violations of Export

Administration regulations, Swiatek 2d Supp. Decl at 94-98, 100-01; Rooney Vaughn Index at

133-37; and "security procedures, firearm specifications, and radio frequencies, all used by special

agents to protect the Secretary, id. at 91; Swiatek 1st Supp. Decl. at 2.

   Judicial Watch's only response is to allege conclusorily that the withholdings are poorly

described.  This is not the case.  For example, one description explains:

> Information about investigative techniques, including how BXA tracks export
> enforcement actions and what investigative concerns specific kinds of cases present,

is protected . . . .  Disclosure would allow circumvention of the system by giving potential violators a key to what kinds of action BXA categorizes as significant and what kinds of action may be considered less significant.  Accordingly, potential violators might decide to risk violations that they may be of lower enforcement priority.

Rooney Vaughn Index at 133-34.  The explanation, similar to that given for other Exemption 7(C) withholdings, is detailed and sufficient to permit withholding.

> H.     Segregability

Even after determination that documents are exempt from disclosure, FOIA analysis is not properly concluded unless a court determines whether "any reasonably segregable portion of a record" can "be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b).  Therefore, "it is error for a district court to simply approve the withholding of an entire document without entering a finding on segregability, or the lack thereof." Schiller v. NLRB, 964 F.2d 1205, 1210 (D.C. Cir.1992).   In this case, the DOC has described thousands of withholdings from thousands of documents, yet has consistently made clear when documents were withheld in full or in part, and if in part, which parts (names, social security numbers, 10 lines here, two paragraphs there).  Further, the DOC, when it claimed multiple exemptions for one document or one piece of information, was careful to discuss each exemption separately and to map each exemption to the precise information withheld.   At times, Judicial Watch has argued that the DOC could have disclosed more than it did.  Judicial Watch's segregability arguments have been dealt already, exemption-by-exemption.   Therefore, segregability issues do not stand in the way of summary judgment.

<u>CONCLUSION</u>

For the foregoing reasons, the Court finds that the DOC is entitled to summary judgment in Civil Action Nos. 95-133 [doc. 617], 97-289 [doc. 32], 97-2416 [docs. 42 and 47], and 96-2747 [doc. 36].

However, the DOC's success today on its summary judgment motions and the comprehensiveness of the second round of searches in no way excuses the agency's handling of Judicial Watch's initial requests.  In 1998, this Court found, as regards these initial requests, that:

> The record in this case establishes beyond any reasonable dispute that [this] search was inadequate, unreasonable, and unlawful under the FOIA. The DOC failed to search entire offices that were likely, if not certain, to hold responsive documents. Documents were destroyed, discarded, and given away, sometimes without being searched to determine if they were responsive, other times with full knowledge that they were responsive.

<u>Judicial Watch</u>, 34 F. Supp. 2d at 45.  At that time, the Court indicated its willingness to consider the issue of sanctions along with the issue of attorney's fees at the litigation's close.  Therefore, while the Court grants summary judgment to the DOC, it simultaneously invites Judicial Watch to file an application for attorney's fees and, additionally, invites Judicial Watch to move for the Court to make any findings needed to cause referral of the DOC's activities to the Office of Special Counsel, pursuant to 5 U.S.C. § 552(a)(4)(F).  Further, the Court remains open to Judicial Watch's motions for other appropriate sanctions.

The Court will issue an order consistent with this memorandum opinion.

Signed by Royce C. Lamberth, United States District Judge, September 30, 2004.