UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                              )
JUDICIAL WATCH, INC.,                         )
                                              )
                    Plaintiff,                )
                                              )        Civil Action No. 95-133
          v.                                  )        Civil Action No. 97-289
                                              )        Civil Action No. 97-2416
                                              )        Civil Action No. 96-2747
                                              )            (RCL)
DEPARTMENT OF COMMERCE,                        )
                                              )
                    Defendant.                )
_____)

## MEMORANDUM OPINION AND ORDER

These cases concern several related Freedom of Information Act ("FOIA") requests made

by Judicial Watch, the plaintiff, to the Department of Commerce ("DOC"), the defendant.  On

September 30, 2004, after nearly ten years of litigation, this Court granted summary judgment to

DOC in each case and dismissed each case because DOC had, at last, conducted a reasonable

search for responsive documents and because DOC's withholdings and redactions of responsive

documents were proper .  While DOC ultimately convinced the Court that it had met its FOIA

obligations, DOC's initial searches were "inadequate, unreasonable, and unlawful."  Therefore,

the court invited Judicial Watch to move for attorney fees and sanctions, if appropriate.

Now before the Court is Judicial Watch's motion [896, 897] for attorney fees and costs

and for sanctions.   The Court will grant in part and deny in part Judicial Watch's motion for the

reasons set forth herein and award $897,331.05 in fees and costs to Judicial Watch.

BACKGROUND

In a December 22, 1998 memorandum opinion, the Court recounted the history of the

case up to that point:

> Plaintiff Judicial Watch filed three Freedom of Information Act (FOIA) requests with the DOC in the fall of 1994 seeking documents regarding the alleged sale of seats on DOC foreign trade missions in exchange for large donations to the Democratic National Committee (DNC). Having received no response from the DOC, Judicial Watch filed this FOIA action on January 19, 1995. On May 17, 1995, the DOC released some 28,000 pages of documents and withheld about one thousand others.
>
> On February 1, 1996, this Court denied the DOC's first motion for summary judgment, finding the agency's <u>Vaughn</u> index to be insufficient to support judgment as a matter of law and also authorizing discovery on the issue of the adequacy of the DOC's document search. The DOC filed a revised <u>Vaughn</u> index in April of 1996 along with a second motion for summary judgment. The Court denied the motion as to the adequacy of the search on August 7, 1996.
>
> On September 5, 1996, the Court granted in part and denied in part the remainder of the DOC's motion as to the agency's withholding of documents pursuant to various FOIA exemptions. The Court found 153 of the 306 documents withheld under Exemption 5 to have been unlawfully withheld and ordered their production; summary judgment was granted for the DOC as to all other documents accounted for in the revised <u>Vaughn</u> index. The Court subsequently granted Judicial Watch's motion to reconsider, reviewed all of the withheld documents in camera, and [reinstated] the September 5, 1996 ruling . . . .
>
> Since Judicial Watch began its discovery in the fall of 1996, it has consistently and persistently uncovered evidence of misconduct and unlawful withholding of documents by the DOC.  It has been demonstrated that the DOC wrongfully withheld documents, destroyed documents, and removed or allowed the removal of others, all with the apparent intention of thwarting the FOIA and the orders of this Court. As if the agency's own conduct were not reprehensible enough, its counsel has also repeatedly strayed far outside the boundaries of professional conduct (although not without some provocation by counsel for Judicial Watch).

<u>Judicial Watch, Inc. v. Dep't of Commerce</u>, 34 F. Supp. 2d 47, 48-49 (D.D.C. 1998).  In a

separate opinion issued that date, the Court took the unusual step of denying the DOC's motion

for summary judgment against itself because, without further court proceedings, any relevant

2

documents that had been transferred out of DOC's control, destroyed, or misplaced "would not be found even by the most exhaustive of searches, and the DOC would have succeeded in circumventing the FOIA." Judicial Watch, Inc. v. Dep't of Commerce, 34 F. Supp. 2d 28, 43 (D.D.C. 1998).  The Court, sua sponte, entered partial summary judgment against DOC, ordered the DOC to undertake a second, more rigorous search for documents,  and authorized further discovery concerning DOC's search and document handling that could lead to the recovery of transferred, destroyed, or lost documents.  Id. at 41, 44-46.

After December 22, 1998, DOC made a second search for responsive documents and Judicial Watch took discovery as authorized by the Court.  While Judicial Watch unearthed some further evidence of improprieties during the first search, Judicial Watch was largely unsuccessful at that task and was unable to reconstruct or locate lost or destroyed responsive documents.  At the conclusion of the second search, DOC moved for summary judgment.  On September 30, 2004, this Court granted DOC's summary judgment motions, disposing of the merits of the case. Judicial Watch v. Dep't of Commerce, 337 F. Supp. 2d 146 (D.D.C. 2004).

Judicial Watch now seeks reimbursement of attorney fees and costs incurred throughout the past 10 years of litigation.  DOC concedes that Judicial Watch should receive some fees and costs for its prosecution of the litigation through December 22, 1998 – the date the Court sua sponte entered partial summary judgment in favor of Judicial Watch – but argues that no fees or costs should be awarded for activity after that date.

_____

_____

ANALAYSIS

The Court will first consider Judicial Watch's eligibility for and entitlement to an award of fees and costs under FOIA.  Finding Judicial Watch eligible and entitled, the Court will then consider the reasonableness of rates and hours for which Judicial Watch seeks compensation. Finally, the Court will consider DOC's opposition to fees incurred by Judicial Watch attorney Larry Klayman and to Judicial Watch's requested fee enhancement.


I.      ELIGIBILITY AND ENTITITLEMENT

FOIA allows a district court, in its discretion, to "assess against the United States reasonable attorney's fees and other litigation costs reasonably incurred in any case ... in which the complainant has substantially prevailed."  5 U.S.C. § 552(a)(4)(E).  "Determining whether an award of attorney's fees is appropriate under the fee-shifting provision of FOIA requires an inquiry into two related but separate issues: (1) Is plaintiff eligible for an award of attorney's fee? (2) If plaintiff is eligible for attorney's fees, is plaintiff entitled to such fees?"  Piper v. Dep't of Justice, 339 F. Supp. 2d 13, 17 (D.D.C. 2004) (citing Nationwide Bldg. Maint., Inc. v. Sampson, 559 F.2d 704, 709, 711 (D.C. Cir. 1977)).  The eligibility determination is nothing more than a determination that plaintiff meets the statutory requirement that "the complainant has substantially prevailed."  Church of Scientology v. Harris, 653 F.2d 584, 587 (D.D.C. 1981).  Not all eligible plaintiffs are also entitled.  Id. at 590.  The entitlement inquiry allows the court to exercise its "sound discretion" to grant or deny fees given the facts of particular cases.  Id.  Once plaintiff is deemed eligible and entitled, the Court focuses on the proper amount of the fee award.

Judicial Watch is clearly eligible.  "In order for plaintiffs in FOIA actions to become eligible for an award of attorney's fees, they must have been awarded some relief by a court, either in a judgment on the merits or in a court-ordered consent decree."  Oil, Chem. & Atomic Workers Int'l Union v. Dep't of Energy, 288 F.3d 452 (D.C.Cir.2002).  In the early stages of litigation, the Court ordered DOC to release numerous unlawfully withheld documents.  See Piper, 339 F. Supp. 2d at 19-20 (finding plaintiff had prevailed because, in part, the Court had ordered release of documents upon plaintiff's motion).  In 1998, as already described, the Court entered partial summary judgment sua sponte against DOC, ordering a new search and authorizing further discovery.  These events qualify as court-awarded relief and surely "changed the legal relationship of the parties."  Oil, Chem. & Atomic Workers Int'l Union, 288 F.3d at 458. DOC concedes this.  (Opp. Br. at 11.)  The fact that Judicial Watch lost summary judgment after the new search does not diminish its earlier successes and does not alter the Court's conclusion that Judicial Watch is eligible for fees.[1]

Judicial Watch is also entitled.  When a court exercises its discretion and considers a plaintiff's entitlement to fees and costs, it may consider, among other factors it deems important:

---

[1]In its brief, DOC agrees that it owes pre December 22, 1998 fees and costs but argues that post December 22, 1998 fees and costs should not be awarded because, during that period of time, Judicial Watch did not substantially prevail – that is, is not eligible for fees.  (Opp. Br. at 10.)  DOC may misunderstand what it means to substantially prevail.  A finding that a plaintiff substantially prevailed is a threshold determination that, once made, permits a court to go on to award fees to an entitled plaintiff while taking into account all the circumstances surrounding the litigation.  The determination does not mean that plaintiff prevailed at every turn; rather, it means that a plaintiff won some court-awarded relief.  Further, the determination does not mean that fees must be awarded; rather, it means fees may be awarded if circumstances permit.  Thus, it is incoherent to say that a plaintiff did or did not substantially prevail in part of its litigation.  A plaintiff does or does not prevail with respect to the whole litigation.  Failures or inefficiencies at particular turns in the litigation can be addressed by reducing the amount of the ultimate award. See Weisberg v. Dep't of Justice, 745 F.2d 1476, 1499 & n.34 (D.C. Cir. 1984).

(1) the benefit to the public if any, derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records sought; and (4) whether the government's withholding of the records had a reasonable basis of law.

<u>Church of Scientology v. Harris</u>, 653 F.2d at 590.  DOC does not question Judicial Watch's entitlement to some fees and costs and the Court concludes that these factors weigh in favor of awarding fees and costs.

Judicial Watch brought this FOIA litigation to discern how DOC selected its trade mission participants.  The organization suspected that DOC officials were raising campaign money by selling seats on DOC trade missions and its FOIA requests were aimed at verifying its suspicion, which, if verified, would be of great interest to the public.  As it turns out – according to Judicial Watch and not contested by DOC – disclosures made as a result of this litigation spurred two Congressional committee investigations and a Federal Elections Commission investigation into the DOC's alleged sale of foreign trade mission seats.  Further, the DOC revised its trade mission participant selection policy to explicitly exclude consideration of past political contributions and activities.  (<u>See</u> Pl.'s Br. at 11.)  Based on all this, the Court concludes that Judicial Watch's interest in the records was to raise issues of campaign finance and concludes that this litigation provided information to the public that would "add to the fund of information citizens may use in making vital political choices."  <u>Cotton v. Heyman</u>, 63 F.3d 1115, 1120 (D.C. Cir. 1995).  Certainly, Judicial Watch's interest was not commercial.  Therefore, the first three factors weigh in favor of awarding fees and costs.

As to the fourth factor, the reasonableness of withholdings, the Court found many of the DOC's pre-1998 justifications of withholdings to be "inadequate."  <u>Judicial Watch v. Dep't of Commerce</u>, 83 F. Supp.2d 105, 107-108 (D.D.C. 1999).  Though the Court ultimately found

DOC's post-1998 withholdings to be proper, Judicial Watch, 337 F. Supp. 2d at 161-82, DOC's earlier inadequate justifications led the court to order the filing of supplemental Vaughn indices and disclosure of documents.  Judicial Watch, 83 F. Supp.2d at 107-108.  DOC's earlier behavior will weigh in favor of awarding fees; its later behavior will not weigh against it, except insofar as it might work a reduction in the fee award.

In addition to the four factors just considered, the Court also considers its previous conclusions that DOC's initial search was unlawful and egregiously mishandled and that likely responsive documents were destroyed and removed.  If the four factors by themselves did not weigh in favor of a fee award, surely DOC's past behavior – demonstrating its lack of reasonableness and lack of respect for the FOIA process – would tip the balance in favor of an award.  As things stand, however, the four factors already favor an award and this additional consideration only makes Court more certain in that conclusion.

II.      REASONABLE RATES AND REASONABLE HOURS

Having found Judicial Watch both eligible for and entitled to an award of reasonable attorney fees and costs, the Court now turns to calculating that award.

> A FOIA litigant entitled to attorney's fees may only recover fees and costs incurred in litigation.  The reasonableness of a fee request must be evaluated in light of the results obtained.   Such fees and costs must be reasonable and should not be awarded for excessive, redundant, or otherwise unnecessary work.  Nor should fees be granted for hours spent on unsuccessful claims that are distinct in all respects from successful claims.  The fee amount is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate.

Piper, 339 F. Supp. 2d at 23-24 (citations omitted).  The Court will first consider the reasonableness of Judicial Watch's hourly rates and then consider the reasonableness of the hours

expended.

### A.      Reasonable Rates

"The appropriate hourly rate for public interest legal services organizations and for-profit firms engaged in public interest work is the prevailing market rate." Northwest Coalition for Alternatives to Pesticides v. Browner, 965 F. Supp. 59, 65 (D.D.C. 1997) (citing Save Our Cumberland Mountains, Inc. v. Hodel, 857 F.2d 1516 (D.C. Cir.1988).   The Laffey Matrix is a schedule of charges based upon years of experience and a compilation of prevailing market rates. The U.S. Attorney's Office updates the schedule annually using the Consumer Price Index. Browner, 965 F. Supp. at 65 n.4 (citing Laffey v. Northwest Airlines, Inc., 746 F.2d 4 (D.C. Cir. 1984)).  Judicial Watch cites to the Laffey Matrix as probative evidence of the prevailing market rates during the course of this litigation.  DOC does not oppose the use of the Laffey Matrix to determine the rates owed to Judicial Watch and the Court finds the rates to be reasonable.

### B.      Reasonable Hours

DOC does not oppose the award of fees and costs for Judicial Watch's efforts prior to December 22, 1998.  DOC does oppose reimbursement for fees and costs incurred after that date.

A court should not award fees for "nonproductive time or for time expended on issues on which plaintiff ultimately did not prevail." Nat'l Ass'n of Concerned Veterans v. Secretary of Defense, 675 F.2d 1319, 1327 (D.C. Cir. 1982).  However, productivity is not always measured in terms of a litigant's ultimate success on a claim.  Sometimes, productivity is measured in terms of whether a court's mandate has been given effect.  New York v. Microsoft Corp., 297 F.

Supp. 2d 15, 37-38 (D.D.C. 2003).

In Microsoft, the Commonwealth of Massachusetts sought attorney fees for prevailing in an antitrust lawsuit brought by several states against Microsoft Corp.  After a bench trial, the Court held Microsoft liable for antitrust violations and, as a remedy, ordered that Microsoft be split into two entities. On appeal, the Circuit Court largely affirmed on the issue of Microsoft's liability but vacated the district court's remedy.  It ordered the district court to "hold a 'remedies-specific evidentiary hearing and to fashion an appropriate remedy' in light of the revised liability findings."  Id. at 19 (quoting United States v. Microsoft Corp., 253 F.3d 34, 103, 105 (D.C. Cir.2001)).  The Court further advised that a "full exploration of facts is usually necessary in order (for the District Court) properly to draw (an antitrust) decree so as to prevent future violations and eradicate existing evils."  Microsoft, 253 F.3d at 101.  On remand, Microsoft succeeded in ducking many of the states' more ambitious remedy proposals.  Despite this:

> The Court does not agree with Microsoft that Plaintiff did not achieve any success in its efforts during the remedy proceeding . . . . [Plaintiff's] efforts achieved the result articulated by the D.C. Circuit that this Court fully explore the facts in order to establish an appropriate remedy for the liability findings.

Microsoft, 297 F. Supp. 2d at 37-38.  Therefore, the district court awarded fees to Massachusetts for its remedy phase efforts, but, in the end, reduced the award by thirty percent because Massachusetts' "proposed remedies were not aimed at addressing the conduct found to be anticompetitive, but rather sought to resolve all existing allegations of anticompetitive behavior which have not been proven or for which liability has not been ascribed, despite the appellate court's instruction that this Court's decree . . . be tailored to fit the wrong creating the occasion

for the remedy." Id. (internal quotations omitted).  The court found a thirty percent reduction to

be proper, accounting for Massachusetts' failed remedy proposals "while still acknowledging the

importance of its efforts to ensure that the ultimate Final Judgment was based on a strong record

of evidence." Id. at 38.

In this case, Judicial Watch's post-1998 discovery was not productive in the sense of

getting tangible results, but quite productive in terms of giving effect to this Court's December

22, 1998 Order that granted Judicial Watch a full and fair opportunity, through additional

discovery, to reconstruct or discover documents that the Court had determined were destroyed or

removed, inadvertently or otherwise, during the DOC's first search.   Further, the order for

further proceedings in this case came not after an appeal by right – which Massachusetts was

entitled to take – but after this Court was presented with evidence of document destruction and

mishandling so egregious and blameworthy that the Court sua sponte declared DOC's search to

be inadequate.  For these reasons, the Court will award fees to Judicial Watch for its post-1998

discovery and related litigation.

As this Court, in conjunction with Magistrate Judge Facciola, supervised post-1998

discovery to ensure relevancy, this Court has no occasion to reduce Judicial Watch's award  as

the Microsoft court reduced Massachusetts' award.  The reduction in Microsoft was due to

Massachusetts proposing remedies outside the scope of remedies authorized by the Court of

Appeals.  In this case, the Court policed Judicial Watch's discovery to ensure that discovery

remained within the scope authorized by the Court, and though Judicial Watch did not win on its

discovery motions at every turn, it prevailed in large part.

Further, the Court will not reduce Judicial Watch's award for the time it spent addressing post-1998 discovery motions and related matters with third-parties. Fees and costs related to these matters were "reasonably incurred," 5 U.S.C. § 552(a)(4)(E),[2] and were, as already noted, authorized by the Court as a result of DOC's unlawful initial search and as a result of the Court's supervision of discovery that followed. Cf. Fashion House, Inc. v. K Mart Corp., 124 F.R.D. 15, (D.R.I. 1988) (awarding to plaintiff, as a sanction for violation of discovery orders, attorney fees associated with responding to third-party discovery objections when defendant's obstructionist conduct caused plaintiff's need to take discovery from third parties).

However, the Court will not award fees to Judicial Watch for the time it expended responding to DOC's post-1998 summary judgment motions.[3] Unlike Judicial Watch's post-1998 discovery, Judicial Watch's summary judgment oppositions were not sanctioned by the Court's December 22, 1998 Order. Moreover, the oppositions were unsuccessful. DOC's post-1998 summary judgment motions largely concerned the propriety of document withholdings after DOC's second, court-ordered search for documents. Not only did the Court conclude that DOC's second search was adequate, the Court found each of DOC's withholdings to be, without exception, proper. In FOIA cases, even a prevailing plaintiff is not generally entitled to fees and costs spent in unsuccessfully opposing government withholdings. Weisberg v. Dep't of Justice,

---

[2] Reading the text of the FOIA fee shifting statute, fees, to be reimbursable, need not be incurred, in every instance, in a face-to-face showdown with the government. Rather, the statute only requires that fees be "reasonably incurred," which leaves open the possibility that a plaintiff's interactions with a third party might, in limited circumstances, subject the government to a fee assessment.

[3] In some cases, Judicial Watch's time entries show an attorney working on both a post-1998 summary judgment matter and another matter. In these cases, the total fee sought for the entry will be reduced by one-half.

11

745 F.2d 1476, 1499 & n.34 (D.C. Cir. 1984) (a prevailing plaintiff cannot recover fees for

unproductive time or time spent on issues on which that plaintiff did not prevail, such as

"fruitless challenges to the . . . use of exemptions"); Piper, 339 F. Supp. 2d at 24-25; Ajluni v.

F.B.I., 947 F. Supp. 599, 611 (N.D.N.Y. 1996); Steenland v. C.I.A., 555 F. Supp. 907, 911

(W.D.N.Y 1983) ("The public cannot be said to have benefitted from the unsuccessful challenge

to the remaining exemptions.").[4]

Therefore, the Court will award attorney fees and costs related to the litigation both

before and after December 22, 1998, including fees related to the time spent on the fee petition,

see Hirschey v. FERC, 777 F.2d 1, 3 (D.C. Cir. 1985); however, that award will exclude Judicial

Watch's efforts in opposition to DOC's post-1998 summary judgment motions.[5]

---

[4]Further, Judicial Watch cannot recover to the extent that it opposed motion to strike
Sonya Stewart's declaration, which it improperly used to argue that DOC's second search was
inadequate.  The Court finds that time spent on this motion was nonproductive.

[5]The Court awards fees and costs pursuant to FOIA's fee-shifting statute.  Because the
Court makes a fee award pursuant to FOIA, the Court does not consider Judicial Watch's
alternative basis for a fee award: sanctions.  The Court notes, however, that DOC's conduct
leading up to the Court's December 22, 1998 Order is not far removed from conduct that has
spurred other courts to sanction the government with an award of attorney fees and costs.  See,
e.g., Jefferson v. Reno, 123 F. Supp. 2d 1, 4-5 (D.D.C. 2000) (awarding, after government
destroyed documents responsive to a FOIA request, sanction of attorney fees related to discovery
and related motions because "[c]ounsel was necessary to monitor and verify Defendant's
reconstruction and production of responsive records"); Landmark Legal Foundation v. E.P.A.,
272 F. Supp. 2d 70 (D.D.C. 2003) (holding government in contempt for violating Court's anti-
tampering order intended to protect documents responsive to a FOIA request and awarding
attorney fees); cf. Nat'l Ass'n of Radiation Survivors v. Turnage, 115 F.R.D. 543, 556-58 (N.D.
Cal. 1987) ("Defendant shall reimburse plaintiffs for all fees and costs incurred in ascertaining
the documents destroyed during the defendant's purge [of potentially discoverable documents]
and in reconstructing them.").  See generally Webb v. District of Columbia, 146 F.3d 964, 971
(D.C. Cir. 1998) ("[A] district court may order sanctions . . . for misconduct . . . pursuant to the
court's inherent power to protect [its] integrity and prevent abuses of the judicial process.").

III.     FLAWS IN DOCUMENTATION OF MR. KLAYMAN'S TIME

DOC asks the Court to exclude the time of Larry Klayman, Judicial Watch's lead

attorney, because Klayman often neglected to keep contemporaneous time records.  DOC does

not dispute the reasonableness of the hours that Klayman claims, but rather the way that Judicial

Watch has documented those hours.  Judicial Watch has submitted two time entry ledgers to

substantiate Klayman's time.  One ledger lists time spent on the case as evidenced by the length

of transcripts and videotapes of court and other proceedings.   (Orfanedes Supp. Decl. Exh. A.)

A second ledger lists time based on Klayman's partial contemporaneous time records; time spent

on pleadings and correspondence authored by Klayman, as conservatively estimated by

Klayman's colleague, Paul Orfanedes; and time spent on travel and preparation, estimated in the

same fashion.  (Orfanedes Supp. Decl. Exh. B; Orfanedes Decl. ¶ 5.)  It is not clear which items

in the second ledger are based on contemporaneous time records.  Nor is it clear what

information these contemporaneous time records contain.

"Casual after-the-fact estimates of time expended on a case are insufficient to support an

award of attorneys' fees."  Nat'l Ass'n of Concerned Veterans v. Secretary of Defense, 675 F.2d

1319, 1326 (D.C. Cir. 1982).  Our Court of Appeals demands that:

> Attorneys who anticipate making a fee application must maintain contemporaneous,
> complete and standardized time records which accurately reflect the work done by each
> attorney. . . .  "[A]ny attorney who hopes to obtain an allowance from the court should
> keep accurate and current records of work done and time spent."

Id.; In re North, 32 F.3d 607, 608-09(D.C. Cir. 1994); see also Keenan v. City of Philadelphia,

983 F.2d 459 (3d Cir. 1992) (asserting that D.C. Circuit, unlike others, strictly requires

contemporaneous records); New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d

1136, 1147 (2d Cir.1983) (changing the Second Circuit's law to align with what it calls D.C.'s

mandatory requirement of contemporaneous records).

Despite the bright-line language in Concerned Veterans and its subsequent interpretation

by other Courts of Appeals, the D.C. Circuit will permit a fee award absent contemporaneous

documentation, Action on Smoking & Health v. Civil Aeronautics Bd., 724 F.2d 211, 220-22

(D.C. Cir. 1984) (allowing fees when attorney had no contemporaneous records, he submitted an

affidavit broadly describing the time he spent on various parts of the litigation, and had incurred

fees before the Concerned Veterans decision and passage of the Equal Access to Justice Act), and

will permit an award if a fee petition contains documentation based on contemporaneous time

records, even if the fee seeking attorney will not produce those records, Kennecott Corp. v. EPA,

804 F.2d 763, 767 (D.C. Cir. 1986); Jordan v. Dep't of Justice, 691 F.2d 514, 519 (D.C. Cir.

1982).  However, when awarding fees in these circumstances, a percentage reduction in fees is

proper.  E.g., Action on Smoking, 724 F.3d at 220.

Apparently, the Court of Appeal's demand for contemporaneous time records is

aspirational – or a requirement for full, as opposed to partial, fee reimbursement.  The Court of

Appeals cautions:

> [T]he recordkeeping requirement should not be imposed in a draconian manner. . . .
> Total denial of requested fees as a purely prophylactic measure, . . . is a stringent
> sanction, to be reserved for only the most severe of situations, and appropriately invoked
> only in very limited circumstances. Outright denial may be justified when the party
> seeking fees declines to proffer any substantiation in the form of affidavits, timesheets or
> the like, or when the application is grossly or intolerably exaggerated, or manifestly filed
> in bad faith.

Id.  See generally Microsoft Corp., 297 F. Supp. 2d at 28-29, 43-44.

In the Microsoft case, the court awarded fees to Massachusetts despite its failure to keep contemporaneous records.  As in this case, the defendant disputed the method of documentation, but not the reasonableness of the fee claim.  Id. at 20.  The Attorney General, after the litigation, reviewed boxes of case materials, "which included the work product in the case, the documents we received, the documents we reviewed, calendar entries, a litany of different types of materials" and "to the extent that those materials clearly related to a specific outlay of time that we believed we could determine was related to an individual and which was relevant to the case . . . we would go ahead and try to record it." Id. at 38-39.  After that process, the Attorney General made conservative estimates of time spent and created a ledger with time entries.  Those who were still in the Attorney General's office were asked to verify entries related to them; those no longer in the office were not asked.  Finally, the Attorney General reviewed all the entries with the goal of eliminating those that were duplicative or ambiguous.  Id. at 39.  The court, after considering this practice of reconstruction, awarded fees but reduced the award by 15%.  Id. at 44.

Judicial Watch has, in part, submitted the kind of records that Massachusetts submitted, and, in part, submitted records superior to those that Massachusetts submitted.  In the second ledger, Judicial Watch has reconstructed Klayman's time in the same manner as the State of Massachusetts reconstructed the time of its lawyers.  The second ledger, reconstructing time based on pleadings and other case records, will permit an award of fees, but, as in Microsoft, that award must be reduced by 15%.[6]

---

[6]The Court imposes this reduction across-the-board for all entries in the second ledger as Judicial Watch has failed to provide the Court with any of the contemporaneous time records that it claims support some of the fee claims listed in that ledger.

For time listed on the first ledger, time based on the length of proceedings, Judicial

Watch may recover fees without a reduction.  Transcripts and videotapes, though not

contemporaneous time records in the traditional sense, nonetheless are records made at the time

of an attorney's work that indicate precisely the length and nature of the work done.  These

records are reliable, perhaps even more reliable, for their purpose, than a mere time record.


IV.     JUDICIAL WATCH IS NOT ENTITLED TO ENHANCEMENT

Finally, the Court reaches Judicial Watch's request for an upward adjustment of its fee

award by 25%.    FOIA's fee-shifting statute allows the award of a reasonable fee.  The lodestar –

reasonable hours times the reasonable rate – usually provides the reasonable fee, Pennsylvania v.

Del. Valley Citizens' Council for Clean Air, 483 U.S. 711, 734 (O'Connor, J., concurring) ("The

lodestar . . . is flexible enough to account for great variation in the nature of the work performed

in, and the challenges presented by, different cases."), but "in some cases of exceptional success

an enhanced award may be justified."  Hensley v. Eckerhart, 461 U.S. 424, 435 (1983).  The

enhancement must be "necessary to provide fair and reasonable compensation."  Thompson v.

Kennickell, 836 F.2d 616, 622 (D.C. Cir. 1988) (quoting Blum v. Stenson, 465 U.S. 886, 901

(1984)); novelty and complexity of issues, special skills and experience of counsel, the quality of

representation, and results obtained are all "presumably fully reflected in the lodestar amount,

and thus cannot serve as independent bases for increasing the basic fee award."  Id. (quoting Del.

Valley, 483 U.S. at 565).

In Thompson, the Court of Appeals reversed a district judge's award of an enhancement

for exceptional success when that judge failed "to mention the hourly rates charged or the

16

number of hours worked, and fail[ed] to explain why compensation for hours worked would not fully compensate the attorneys." <u>Id.</u> at 623.  The district judge had mistakenly "treated the exceptional victory [of the plaintiff] as an independent factor warranting enhancement per se" due to the case's "far reaching impact on an entire business or profession."  <u>Id.</u>

<u>Thompson</u> dooms Judicial Watch's enhancement claim.  Judicial Watch offers no argument for why the lodestar does not offer it sufficient compensation.  It simply highlights its successes and the "tremendous efforts necessary to prosecute this case," things presumably accounted for in the loadstar.  As for the other "exceptional" circumstances Judicial Watch summarily notes – the length of the litigation and DOC misconduct – Judicial Watch has failed to articulate why these circumstances are, first, relevant to fee calculations, and second, why they would justify an enhancement.

For these reasons, Judicial Watch will not receive an enhancement to its fee award.

<u>CONCLUSION</u>

The Court finds that Judicial Watch is eligible for and entitled to an award of fees and costs.  The hourly rates proposed by Judicial Watch – based on the Laffey Matrix – are reasonable.  The hours claimed by Judicial Watch are reasonable, with the exception of the hours spent opposing post-1998 summary judgment motions.  Judicial Watch may recover fees associated with Mr. Klayman's work, minus a reduction for Klayman's failure to maintain contemporaneous records.  Judicial Watch may not have an enhanced award.  The Court will award fees and costs in this manner.

It is therefore hereby

ORDERED that Judicial Watch's  motion [896, 897] for attorney fees and costs and for sanctions is GRANTED IN PART and DENIED IN PART.

ORDERED that DOC pay Judicial Watch attorney fees and costs in the amount of $897,331.05, as calculated in the attached Appendix.


Signed by Royce C. Lamberth, United States District Judge, July 29, 2005.

APPENDIX

| A.  Total Fees Sought (all periods of litigation) | $875,616.20 |
|---|---|
| B.  Klayman Claimed Fees Subject to Reduction (Second Ledger) | $90,700.11 |
| C.  Post-1998 Summary Judgment Fees that are also Klayman Claimed Fees Subject to Reduction (and must be subtracted from B) | $377.50     TOTAL<br>$335.00 (Klayman, 4/16/99)<br>$42.50 (Klayman, 2/25/00) |
| D.  Klayman Fees Subject to Reduction after Summary Judgment Deductions (B minus C) | $90,322.61 |
| E.  Reduction to Overall Fees, After Reducing Klayman Fees Subject to Reduction (15% of D) | $13,548.40 |
| F.  All Other (Non Klayman) Post-1998 Summary Judgment Fees to be Deducted from Award | $9443.12     TOTAL<br>$1160.00 (Favish, 4/12/99)<br>$1160.00 (Favish, 4/13/99)<br>$1160.00 (Favish, 4/14/99)<br>$580.00 (Favish, 4/15/99)<br>$360.00 (Orfanedes, 4/15/99)<br>$300.00 (Orfanedes, 4/16/99)<br>$81.25 (Orfanedes, 4/4/03)<br>$121.87 (Orfanedes, 4/9/03)<br>$81.25 (Orfanedes, 5/19/03)<br>$83.75 (Orfanedes, 6/24/03)<br>$2010.00 (Orfanedes, 6/25/03)<br>$2345.00 (Orfanedes, 6/26/03) |
| G.   Fees Expended on Motion to Strike to be Deducted from Award | $933.75     TOTAL<br>$83.75 (Ofanedes, 8/05/03)<br>$210.00 (Aldrich, 8/21/03)<br>$262.50 (Aldrich, 8/21/03)<br>$210.00 (Aldrich, 8/25/03)<br>$83.75 (Orfanedes, 8/25/03)<br>$83.75 (Orfanedes, 10/10/03) |
| H.  Total Fee After Deductions (A minus E, F, and G) | $851,690.93 |
| I.  Total Costs Sought (all periods of litigation) | $45,640.12 |
| J.  TOTAL AWARD (H plus I) | $897,331.05 |